1  **STEPHEN D. DEMIK**
California State Bar No. 221167
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3  San Diego, California 92101-5030
Telephone: (619) 234-8467
4

5  Attorneys for Mr. Moreno, Jr.

6

7

8  UNITED STATES DISTRICT COURT

9  SOUTHERN DISTRICT OF CALIFORNIA

10  (**HONORABLE ROGER T. BENITEZ**)

11

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. **08CR0546-RTB** |
| ) | |
| Plaintiff, ) | DATE:        June 2, 2008 |
| ) | TIME: 2:00 p.m. |
| v. ) | |
| ) | NOTICE OF MOTIONS AND |
| ) | MOTIONS: |
| **ARTURO MORENO, JR.**, ) | |
| ) | (1)    TO COMPEL SPECIFIC DISCOVERY; |
| Defendant. ) | (2)    SUPPRESS IMPERMISSIBLY SUGGESTIVE IDENTIFICATION; |
| ) | (3)    SUPPRESS EVIDENCE SEIZED IN VIOLATION OF THE FOURTH AMENDMENT; |
| ) | (4)    DISMISS INDICTMENT DUE TO IMPROPER GRAND JURY INSTRUCTION; AND |
| ) | (5)    FOR LEAVE TO FILE FURTHER MOTIONS |

22  TO:    KAREN HEWITT, UNITED STATES ATTORNEY, AND
RANDY JONES, ASSISTANT UNITED STATES ATTORNEY:
23

24        PLEASE TAKE NOTICE that on June 2, 2008, at 2:00 p.m. or as soon thereafter as counsel

25  may be heard, the defendant, Arturo Moreno, Jr., by and through his counsel, Stephen D. Demik and

26  Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting the following

27

28                                                                                              08CR0546-RTB

1 | motions.

2 | **MOTIONS**

3 |     The defendant, Arturo Moreno, Jr., by and through his attorneys, StephenD. Demik and

4 | Federal Defenders of San Diego, Inc., pursuant to the United States Constitution, the Federal Rules

5 | of Criminal Procedure, and all other applicable statutes, case law and local rules, hereby moves this

6 | Court for an order:

7 |     (1)    To Compel Specific Discovery;
    (2)    Suppress Identification;

8 |     (3)    Suppress Evidence Seized in Violation of the Fourth Amendment;
    (3)    Dismiss Indictment Due to Improper Grand Jury Instruction; and

9 |     (4)    for Leave to File Further Motions

10 |

11 |     These motions are based upon the instant motions and notice of motions, the attached

12 | statement of facts and memorandum of points and authorities, and all other materials that may come

13 | to this Court's attention at the time of the hearing on these motions.

14 |

15 |     Respectfully submitted,

16 |

17 |

18 | Dated: May 20, 2008                    **STEPHEN D. DEMIK**
Federal Defenders of San Diego, Inc.

19 | Attorneys for Mr. Moreno

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

          08CR0546-RTB

1  **STEPHEN D. DEMIK**
   California State Bar No. 221167
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California  92101-5030
   Telephone:  (619) 234-8467
4

5  Attorneys for Mr. Moreno, Jr.

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10                  (**HONORABLE ROGER T. BENITEZ**)

11  UNITED STATES OF AMERICA,          )    CASE NO. **08CR0546-RTB**
                                       )
12            Plaintiff,               )
                                       )    STATEMENT OF FACTS AND
13  v.                                 )    MEMORANDUM OF POINTS AND
                                       )    AUTHORITIES IN SUPPORT OF
14  **ARTURO MORENO, JR.**,            )    DEFENDANT'S MOTIONS
                                       )
15            Defendant.               )
    _____)
16

17                            **I.**

18                    <u>STATEMENT OF FACTS</u>

19         On February 13, 2008 Mr. Jesus Ortiz, Jr. drove a red 1999 Chrysler CV to the Calexico East

20  Port of Entry.  Mr. Ortiz was the driver and sole occupant of the vehicle.  Apparently, Border Patrol

21  agents claim the he drove through secondary inspection without stopping, although Mr. Ortiz claimed

22  there was a mis-communication and he did not intentionally run the port.  While at the POE, Mr.

23  Ortiz claimed to have owned the Chrysler for five years and crossed the border frequently.

24         In response, Border Patrol agents called the Calexico Police Department for assistance.  They

25  came upon Mr. Ortiz driving the Chrysler  near his residence.  The Calexico PD arrested Mr. Ortiz

26  along with Mr. Arturo Moreno, Jr. was riding as a passenger in the Chrysler at the time.  Two

27  individuals, later identified as undocumented without permission to be in the United States, were in

28  the rear of the Chrysler.  These two individuals are now designated material witnesses in this case.

                                                                          08CR0546-RTB

1   Mr. Moreno was arrested and brought to the POE along with the other three individuals.
2   After being read his rights, Mr. Moreno invoked them and was not questioned. Mr. Ortiz gave
3   videotaped statements to the agents. He said that he picked up the two material witnesses at a local
4   McDonald's because they asked for a ride to Heber, CA. Mr. Ortiz denied knowing that the material
5   witnesses were illegal and claimed that he did not place anyone in the trunk of his Chrysler.

6   The two material witnesses were both interviewed at the POE. Both were coming from
7   Mexicali into the United States. In substance, they claimed that a man driving a red convertible
8   placed them in the trunk of the vehicle. They were then crossed into the United States and taken out
9   of the vehicle, where there were two men present. One of the material witnesses states that the driver,
10  Mr. Ortiz, instructed them to tell agents they were getting a ride to Heber.

11  When the first material witness was presented with a six-pack photo lineup, he expressed
12  some confusion. When asked to identify Mr. Moreno, Jr., the first material witness told the agents,
13  "I think it's his friend," and that the photograph "looked like" the passenger. He identified photo #1
14  as the passenger. He mis-identified Mr. Moreno, whose picture was in another position. The second
15  material witness chose Mr. Moreno's photograph as being the passenger. It appears that all four
16  occupants of the Chrysler were arrested together and taken to the POE together. Mr. Moreno and Mr.
17  Ortiz were photographed wearing the same clothing they wore at the time of the arrest.

18  On February 27, 2008 Mr. Moreno, Jr. was indicted with four counts of violations of 8 U.S.C.
19  §§ 1324(a)(2)(B)(ii) and (iii), and 18 U.S.C. § 2 involving the smuggling of an alien into the United
20  States for financial gain and aiding and abetting.

21  **II.**

22  **MOTION TO COMPEL SPECIFIC DISCOVERY**

23  Mr. Moreno moves for the disclosure of the following discovery. This request includes
24  discovery of which the government attorney knows, and discovery of which the government attorney
25  may become aware through the exercise of due diligence. See Fed. R. Crim. P. 16.

26  (1)  The Defendant's Statements. The defendant requests all oral, written, or recorded
27  statements made by her, including any statements contained in the handwritten notes of any
28  government agent, and any response he made to any Miranda warnings that government agents may

2                                08CR0546-RTB

1  have read to him.  Fed. R. Crim. P. 16(a)(1)(A); Fed. R. Crim. P. 16(a)(1)(B).

2       (2)  <u>Arrest Reports, Notes, Dispatch Tapes.</u>  The defendant requests all arrest reports, notes,

3  ***dispatch tapes***, and any other materials that relate to the circumstances surrounding his arrest and

4  interrogation. This request includes, but is not limited to radio communications, rough notes, records,

5  reports, transcripts, or other documents which contain statements of the defendant or any other

6  discoverable material.  Fed. R. Crim. P. 16(a)(1)(A); Fed. R. Crim. P. 16(a)(1)(B); <u>Brady v.</u>

7  <u>Maryland</u>, 373 U.S. 83 (1963).  The government must disclose arrest reports, investigator's notes,

8  memoranda from arresting officers, ***dispatch tapes***, sworn statements, and prosecution reports

9  pertaining to the defendant.  Fed. R. Crim. P. 16(a)(1)(B).

10       (3)  <u>The Defendant's Prior Record.</u>  The defendant requests disclosure of his prior record,

11  including any court documents received pertaining to Mr. Moreno.  Fed. R. Crim. P. 16(a)(1)(D).

12       (4)  <u>Evidence Seized.</u>  The defendant requests disclosure of evidence seized as a result of any

13  search, whether warrantless or with a warrant.  Fed. R. Crim. P. 16(a)(1)(E).

14       (5)  <u>Tangible Objects.</u>  The defendant requests the opportunity to inspect, copy, or test all

15  documents and tangible objects, including photographs, books, papers, documents, alleged controlled

16  substances, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the

17  defense, intended for use in the government's case, or were obtained from or belong to the defendant.

18  Fed. R. Crim. P. 16(a)(1)(E).  This request includes ***color photographs of the six-pack photo lineups***

19  from this case.

20       (6)  <u>Request for Preservation of Evidence.</u> [1]  The defendant requests preservation of all

21  physical evidence, ***including dispatch tapes***, that the government or its agents may destroy, lose, or

22  otherwise fail to preserve, and which relates to the arrest or the events leading to the arrest in this

23  case.  This request includes, but is not limited to, the results of any fingerprint analyses, the

24  defendant's personal effects, and any other evidence seized from the defendant, or any third party.

25  This request also encompasses a request to preserve for questioning all the people from the car in

26  which defendant was driving.  The defendant requests that the Court order at the time of the motions

27  _____

28      [1] Mr. Moreno includes a proposed order for the preservation of evidence, attached to these
motions.

08CR0546-RTB

1  hearing that the government preserve all evidence to avoid a future status conference regarding that

2  evidence.

3      (7)  <u>Reports Of Examinations And Tests.</u>  The defendant requests the opportunity to inspect

4  and copy any reports of physical or mental examinations, and any scientific tests, which are material

5  to the defense, or intended for use in the government's case.  Fed. R. Crim. P. 16(a)(1)(F).

6      (8)  <u>Expert Witnesses.</u>  The defendant requests the name, qualifications, and a written

7  summary of the testimony of any person that the government intends to call as an expert witness

8  during its case.  Fed. R. Crim. P. 16(a)(1)(G).  Mr. Moreno requests that the Court order disclosure

9  of this discovery at least four weeks prior to trial in order to investigate it, to prepare <u>in</u> <u>limine</u>

10  motions in a timely manner, and to prepare adequately for trial.

11      (9)  <u>Brady Material.</u>  The defendant requests all documents, statements, reports, and tangible

12  evidence favorable to the defendant on the issue of guilt, which affects the credibility of the

13  government's case, or which may result in a lower sentence under the United States Sentencing

14  Guidelines and/or 18 U.S.C. § 3552.  <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  Under <u>Brady</u>,

15  impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the

16  accused.  <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

17      (10)  <u>Giglio Information.</u>  The defendant requests all statements and/or promises, express or

18  implied, made to any government witness in exchange for their testimony in this case, and all other

19  information which could arguably impeach any government witness.  <u>Giglio v. United States</u>, 405

20  U.S. 150 (1972).

21      (11)  <u>Henthorn Material.</u>  The defendant requests that the government examine the personnel

22  files of all government agents who may testify in this action for <u>Brady</u> material.  <u>United States v.</u>

23  <u>Herring</u>, 83 F.3d 1120 (9th Cir. 1996).

24      (12)  <u>Informants And Cooperating Witnesses.</u>  The defendant requests the name, address, and

25  location of any informants or cooperating witnesses the government used or will use in this case, and

26  in particular, the name, address, and location of any informant who was a percipient witness in this

27  case, or who otherwise participated in the crime charged against Mr. Moreno.  <u>Roviaro v. United</u>

28  <u>States</u>, 353 U.S. 52, 61-62 (1957).  The government must disclose any information derived from

08CR0546-RTB

1  informants which exculpates, or tends to exculpate, the defendant. <u>Brady v. Maryland</u>, 373 U.S. 83

2  (1963). The government must also disclose any information indicating bias on the part of any

3  informant or cooperating witness. <u>Id.</u> As Mr. Moreno's co-defendant Jesus Ortiz, might be asked and

4  agree to testify against Mr. Moreno, he hereby asks for any and all <u>Brady</u> information, including

5  *interviews* with Mr. Ortiz and *tape-recorded conversations* from Mr. Ortiz's time in custody at the

6  Imperial County Jail.

7      (13) <u>Jencks Act Material.</u>  The defendant requests, at least two weeks in advance of trial, all

8  material, including dispatch tapes, which the government must produce pursuant to 18 U.S.C. § 3500.

9  Advance production will avoid the possibility of delay at the request of defendant to investigate the

10  <u>Jencks</u> material.  Disclosure of this discovery at least two weeks prior to trial will also enable Mr.

11  Moreno to prepare <u>in</u> <u>limine</u> motions in a timely manner and to prepare adequately for trial.

12      (14) <u>Any Proposed 404(b) Evidence.</u>  The defendant requests prior notice of any "other acts"

13  that the government intends to introduce in its case-in-chief, through impeachment, or in its rebuttal

14  case. Fed. R. Evid. 404(b); Fed. R. Evid. 609; <u>United States v. Vega</u>, 188 F.3d 1150 (9th Cir. 1999).

15  Mr. Moreno requests that the Court order disclosure of this discovery at least three weeks prior to

16  trial in order to investigate the "acts," to prepare <u>in</u> <u>limine</u> motions, and to adequately prepare for

17  trial.

18      (15) <u>Residual Request</u>.  Mr. Moreno  intends by this discovery motion to invoke his rights

19  to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the

20  Constitution and laws of the United States.  Mr. Moreno requests that the government provide himer

21  with the above requested material sufficiently in advance of trial to avoid unnecessary delay prior to

22  cross-examination.

**III**.

**<u>THIS COURT SHOULD EXCLUDE THE IMPERMISSIBLY SUGGESTIVE
IDENTIFICATION OF ONE OF THE MATERIAL WITNESSES</u>**

26      A suggestive pre-trial identification may so taint subsequent out-of-court and in-court

27  identifications that an accused is denied due process of law if the witness is permitted to make the

28  in-court identification. <u>United States v. Love</u>, 746 F.2d 477, 478 (9th Cir. 1984).  An unnecessarily

1   suggestive pre-trial identification procedure will cause identifications to be excluded at trial where

2   the pre-trial procedure was so impermissibly suggestive as to give rise to a substantial likelihood of

3   irreparable misidentification.  <u>Simmons v. United States</u>, 390 U.S. 377 (1968).  Once a procedure is

4   established as impermissibly suggestive, the reliability of the subsequent in-court identification of

5   evidence must be analyzed by weighing the indicia of reliability against the indicia of improper

6   influence, that is "the corrupting tendencies of a suggestive pre-trial identification procedure."

7   <u>United States v. Field</u>, 625 F.2d 862, 867 (9th Cir. 1980).

8       The Ninth Circuit has held that "[c]onvictions based on in-court identifications following a

9   pre-trial identification by photograph will be set aside where the photographic identification

10  procedure was so impermissibly suggestive as to give rise to a substantial likelihood of

11  misidentification."  <u>United States v. Barrett</u>, 703 F.2d 1076, 1084 (9th Cir. 1983).

12      In <u>Simmons v. United States</u>, <u>supra</u>, the Supreme Court extended the lineup decisions of the

13  <u>United States v. Wade</u>, 388 U.S. 218 (1967), and <u>Gilbert v. California</u>, 388 U.S. 263 (1967) to cover

14  the photographic lineup procedure.  Photographic identifications must therefore meet the due process

15  standards set forth in <u>Stovall v. Denno</u>, 388 U.S. 293 (1967).

16      A photographic display should not be arranged so that a particular individual's picture is in

17  some way emphasized.   Furthermore, the presentation of a photographic lineup must not be

18  conducted so as to indicate or predispose the identifying party to pick out the accused.  <u>Simmons v.</u>

19  <u>United States</u>, <u>supra</u>, at 383.  Since counsel was not present at the presentation of the photographic

20  identification and has not been provided color copies of the six-pack used, an evidentiary hearing

21  should be conducted to ensure that the lineups comported with due process standards.

22  **A.    The Out-of-Court "Identification" in this Case Was Unreliable.**

23      As with other methods of out-of-court identification, reliability is the lynchpin in determining

24  whether the photographic identification is admissible at trial.  <u>Manson v. Brathwaite</u>, 432 U.S. 98,

25  106 (1977).  The Supreme Court has set forth five factors to consider in determining the <u>independent</u>

26  reliability of identification testimony.  <u>Neil v. Biggers</u>, 409 U.S. 188 (1972).  The factors to be

27  considered are:  (1) the opportunity of the witness to view the individual at the time of the crime; (2)

28  the witness's degree of attention; (3) the accuracy of the witness's prior description; (4) the level of

1    certainty demonstrated by the witness at confrontation; and (5) the length of time between the crime

2    and time of confrontation.  Biggers, 409 U.S. at 199-200.  Unless the in-court identification satisfies

3    these criteria, it must be suppressed.  In addition, two (2) factors are typically added to the Biggers

4    analysis, which focus on the indices of improper influence: (1) the presence of influence; and, (2)

5    the conduct on the part of the government agents tending to focus the witness' attention on the

6    defendant.  United States v. Field, supra, at 866.

7         In the present case, by anyone's account, the material witnesses were able to observe Mr.

8    Moreno in a matter of seconds.  Further, they were in the trunk of Mr. Ortiz's vehicle, under

9    extremely stressful conditions, immediately prior to those seconds.  Their attention span was certainly

10   limited by the situation.  There was no prior contact with Mr. Moreno by either material witness.  The

11   level of certainty was minimal at least on behalf of the first material witness, which demonstrates the

12   unreliability of the second material witnesses's identification.  Finally, the length of time between the

13   event and identification was also minor, approximately 6 hours by the Border Patrol report.

14   Cumulatively assessed, these factors make the second material witness's identification inherently

15   unreliable under the Biggers analysis.  This Court should exclude the photographic lineup as

16   impermissibly suggestive and unconstitutional.

17   **B.    If this Court Does Not Grant this Motion on its Face an Evidentiary Hearing Should
         Be Held.**

18

19        If this Court does not grant this motion on its face and evidentiary hearing should conducted

20   to determine whether the photo identifications should be admitted.  Prior to that hearing, defense

21   counsel should be given color copies of the lineups and be allowed to call a witness to testify as to

22   the identifications.  Mr. Moreno requests the Court to hold the evidentiary hearing on the date set for

23   the motion hearing.  If not available, he requests an evidentiary hearing at the next possible court date

24   on the Court's calendar.

25   //

26   //

27   //

28   //

1

## IV.

2

## THIS COURT SHOULD SUPPRESS EVIDENCE TAKEN IN VIOLATION OF THE FOURTH AMENDMENT

3

4    It is the government's burden to establish that the totality of the circumstances attendant to

5 the stop in this case were based upon a reasonable suspicion that criminal activity was afoot. United

6 States v. Sigmond-Ballesteros, 285 F.3d 1117, 1121 (9th Cir. 2002). A reviewing court "must look

7 at the 'totality of the circumstances' of [the] case to see whether the detaining officer has a

8 'particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvizu, 534

9 U.S. 266, 273 (2002).  There is no information provided in discovery as to the circumstances of the

10 stop of Mr. Ortiz's vehicle,[2] and dispatch tapes have yet to be produced.  Therefore, Mr. Moreno

11 moves for an evidentiary hearing on the issue.  Because there was no warrant for the stop of the

12 vehicle, the government must prove an exception to the warrant requirement existed.  See United

13 States v. Hawkins, 249 F.3d 867, 872 (9th Cir. 2001) (government bears burden of establishing that

14 warrantless vehicle stop comports with Fourth Amendment).

15    ## V.

16

## THIS COURT SHOULD DISMISS THE INDICTMENT DUE TO A GRAND JURY VIOLATION BECAUSE THE GRAND JURY WAS NOT CHARGED PROPERLY

17

18    The Ninth Circuit and the Supreme Court have recently rejected several challenges to the

19 instructions given to grand jurors in the Southern District of California.  See United States v.

20 Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc), cert denied 126 S.Ct. 736 (2005).  See Ex.

21 A (2006 grand jury charge).  However, it remains outstanding whether the indictment must be

22 dismissed in a case such as this one where the grand jurors are told that they cannot consider penalty

23 information.  See Ex. A at 5-6 (grand jury charge).  Well-settled principles regarding the

24 constitutional function of the grand jury make clear that it must.

25    The instructions forbidding the grand jurors from considering the potential punishments

26 associated with the offenses they are considering run afoul of Vasquez v. Hillery, 474 U.S. 254

27

28    [2] Mr. Moreno, as a passenger in the vehicle, has standing to challenge the stop.  Brendlin v. California, 127 S. Ct. 2400 (2007).

1   (1986).  These instructions cannot be reconciled with <u>Vasquez</u>'s recognition that the grand jury has

2   "the power to charge a greater offense or a lesser offense; numerous counts or a single count; and

3   perhaps most significant of all, a capital offense or a non-capital offense[,] all on the basis of the same

4   facts."  <u>Vasquez</u>, 474 U.S. at 263.  Moreover, punishment information is certainly germane to any

5   assessment of "the need to indict."  <u>Id.</u> at 264.

6           As Judge Hawkins put it, "[i]f grand jurors can choose, per <u>Vasquez</u>, between capital and non-

7   capital offenses, how could they not be influencing the determination of punishment?"  <u>Navarro-</u>

8   <u>Vargas</u>, 408 F.3d at 1214 (Hawkins, J., dissenting).  <u>Accord</u> <u>Navarro-Vargas</u>, 367 F.3d at 899

9   (Kozinski, J., dissenting).  The instructions here "seek to eradicate this important function." <u>Id.</u>  The

10  approval of these instructions conflicts with <u>Vasquez</u>.  Because the en banc majority in <u>Navarro-</u>

11  <u>Vargas</u> did not address this challenge, this is an open question.

12          Moreover, the erroneous instruction is an unlawful exercise of supervisory power over the

13  grand jury.  <u>See generally</u> <u>United States v. Williams</u>, 504 U.S. 36 (1992).  In evaluating whether a

14  court could order prosecutors to disclose exculpatory evidence to grand jurors as an exercise of

15  supervisory power, the Supreme Court held that "as a general matter at least, no such 'supervisory'

16  judicial authority exists."  <u>Williams</u>, 504 U.S. at 47.  Indeed, although the supervisory power may

17  provide the authority "to dismiss an indictment because of misconduct before the grand jury, at least

18  where that misconduct amounts to a violation of one of those 'few, clear rules which were carefully

19  drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's

20  functions,'" <u>id.</u> at 46 (quoting <u>United States v. Mechanik</u>, 475 U.S. 66, 74 (1986) (O'Connor, J.,

21  concurring), it does not serve as "a means of *prescribing* such standards of prosecutorial conduct in

22  the first instance."  <u>Id.</u> at 47 (emphasis added).  It follows, then, that if courts cannot prescribe

23  standards for the conduct of prosecutors, courts have even less authority to prescribe rules purporting

24  to cabin the subject matter of the inquiries and deliberations of grand jurors.  <u>See</u> <u>id.</u> at 48 ("[t]he

25  grand jury [is] functional[ly] independen[t] from the Judicial Branch").

26          The federal courts possess only "very limited" power "to fashion, on their own initiative, rules

27  of grand jury procedure."  <u>Id.</u> at 50.  In exercising that "very limited" power" courts cannot

28  "reshap[e] ... the grand jury institution, [and] substantially alter[] the traditional relationships between

1 the prosecutor, the constituting court, and the grand jury itself." Id. That is precisely what the

2 instructions here do. See Navarro-Vargas, 367 F.3d at 899 (Kozinski, J., dissenting).

3    The "judicial reshaping" of the grand jury's role is made manifest by the conflicts between

4 the instructions and the Supreme Court's explication of the grand jury's role in Vasquez. By

5 forbidding the grand jurors from considering the desirability of a particular penalty, i.e., preventing

6 them from fulfilling the role described in Vasquez, the district court prevented the grand jury from

7 performing its traditional function. The instruction effects "judicial reshaping of the grand jury

8 institution, [which] substantially alter[ed] the traditional relationships between the prosecutor, the

9 constituting court, and the grand jury itself," Williams, 504 U.S. at 50, by instructing the grand jurors

10 that they could not consider penalty information, even though those grand jurors possess "power to

11 charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most

12 significant of all, a capital offense or a non-capital offense." Vasquez, 474 U.S. at 263. The

13 instructions' "judicial reshaping" of the grand jury is forbidden by Williams.

**VI.**

**LEAVE TO FILE FURTHER MOTIONS**

16    Mr. Moreno and defense counsel have received 148 pages of discovery and a DVD in this

17 case. As new information surfaces due to the government providing discovery in response to these

18 motions or an order of this court, or through defense investigation, the defense may find it necessary

19 to file further motions, or to supplement existing motions with additional facts. Therefore, defense

20 counsel requests the opportunity to file further motions based upon information gained from

21 discovery.

22 //

23 //

24 //

25 //

26 //

27 //

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VII.**

**CONCLUSION**

For the reasons stated, Mr. Moreno requests that this Court grant his motions.

Respectfully submitted,

Dated:  May 22, 2008

*/s/ STEPHEN D. DEMIK*
**STEPHEN D. DEMIK**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Moreno
Stephen_Demik@fd.org

08CR0546-RTB

1

INDEX TO EXHIBITS

2

3  EXHIBIT A        JANUARY 2007 GRAND JURY TRANSCRIPT

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>CERTIFICATE OF SERVICE</u>**

2

3        Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best

4  information and belief, and that a copy of the foregoing document has been caused to be delivered

5  this day upon:

6        Courtesy Copy Chambers

7        Copy Assistant U.S. Attorney via ECF NEF

8        Copy Defendant

9  Dated:  May 22, 2008                  s/ *STEPHEN D. DEMIK*

10                                 Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900

11                                 San Diego, CA 92101-5030
(619) 234-8467  (tel)

12                                 (619) 687-2666  (fax)
Stephen_Demik@fd.org (email)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                08CR0546-RTB