**STEPHEN D. DEMIK**
California State Bar No. 221167
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467

Attorneys for Mr. Moreno, Jr.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(**HONORABLE ROGER T. BENITEZ**)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. **08CR0546-RTB** |
| Plaintiff, ) | |
| ) | STATEMENT OF FACTS AND |
| v. ) | MEMORANDUM OF POINTS AND |
| ) | AUTHORITIES IN SUPPORT OF |
| **ARTURO MORENO, JR.**, ) | DEFENDANT'S MOTIONS |
| Defendant. ) | |

**I.**

**STATEMENT OF FACTS**

On February 13, 2008 Mr. Jesus Ortiz, Jr. drove a red 1999 Chrysler CV to the Calexico East Port of Entry. Mr. Ortiz was the driver and sole occupant of the vehicle. Apparently, Border Patrol agents claim the he drove through secondary inspection without stopping, although Mr. Ortiz claimed there was a mis-communication and he did not intentionally run the port. While at the POE, Mr. Ortiz claimed to have owned the Chrysler for five years and crossed the border frequently.

In response, Border Patrol agents called the Calexico Police Department for assistance. They came upon Mr. Ortiz driving the Chrysler near his residence. The Calexico PD arrested Mr. Ortiz along with Mr. Arturo Moreno, Jr. was riding as a passenger in the Chrysler at the time. Two individuals, later identified as undocumented without permission to be in the United States, were in the rear of the Chrysler. These two individuals are now designated material witnesses in this case.

08CR0546-RTB

1    Mr. Moreno was arrested and brought to the POE along with the other three individuals.
2 After being read his rights, Mr. Moreno invoked them and was not questioned. Mr. Ortiz gave
3 videotaped statements to the agents. He said that he picked up the two material witnesses at a local
4 McDonald's because they asked for a ride to Heber, CA. Mr. Ortiz denied knowing that the material
5 witnesses were illegal and claimed that he did not place anyone in the trunk of his Chrysler.

6    The two material witnesses were both interviewed at the POE. Both were coming from
7 Mexicali into the United States. In substance, they claimed that a man driving a red convertible
8 placed them in the trunk of the vehicle. They were then crossed into the United States and taken out
9 of the vehicle, where there were two men present. One of the material witnesses states that the driver,
10 Mr. Ortiz, instructed them to tell agents they were getting a ride to Heber.

11    When the first material witness was presented with a six-pack photo lineup, he expressed
12 some confusion. When asked to identify Mr. Moreno, Jr., the first material witness told the agents,
13 "I think it's his friend," and that the photograph "looked like" the passenger. He identified photo #1
14 as the passenger. He mis-identified Mr. Moreno, whose picture was in another position. The second
15 material witness chose Mr. Moreno's photograph as being the passenger. It appears that all four
16 occupants of the Chrysler were arrested together and taken to the POE together. Mr. Moreno and Mr.
17 Ortiz were photographed wearing the same clothing they wore at the time of the arrest.

18    On February 27, 2008 Mr. Moreno, Jr. was indicted with four counts of violations of 8 U.S.C.
19 §§ 1324(a)(2)(B)(ii) and (iii), and 18 U.S.C. § 2 involving the smuggling of an alien into the United
20 States for financial gain and aiding and abetting.

## II.

## MOTION TO COMPEL SPECIFIC DISCOVERY

23    Mr. Moreno moves for the disclosure of the following discovery. This request includes
24 discovery of which the government attorney knows, and discovery of which the government attorney
25 may become aware through the exercise of due diligence. See Fed. R. Crim. P. 16.

26    (1) The Defendant's Statements. The defendant requests all oral, written, or recorded
27 statements made by her, including any statements contained in the handwritten notes of any
28 government agent, and any response he made to any Miranda warnings that government agents may

have read to him. Fed. R. Crim. P. 16(a)(1)(A); Fed. R. Crim. P. 16(a)(1)(B).

(2) <u>Arrest Reports, Notes, Dispatch Tapes.</u> The defendant requests all arrest reports, notes, ***dispatch tapes***, and any other materials that relate to the circumstances surrounding his arrest and interrogation. This request includes, but is not limited to radio communications, rough notes, records, reports, transcripts, or other documents which contain statements of the defendant or any other discoverable material. Fed. R. Crim. P. 16(a)(1)(A); Fed. R. Crim. P. 16(a)(1)(B); <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). The government must disclose arrest reports, investigator's notes, memoranda from arresting officers, ***dispatch tapes***, sworn statements, and prosecution reports pertaining to the defendant. Fed. R. Crim. P. 16(a)(1)(B).

(3) <u>The Defendant's Prior Record.</u> The defendant requests disclosure of his prior record, including any court documents received pertaining to Mr. Moreno. Fed. R. Crim. P. 16(a)(1)(D).

(4) <u>Evidence Seized.</u> The defendant requests disclosure of evidence seized as a result of any search, whether warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1)(E).

(5) <u>Tangible Objects.</u> The defendant requests the opportunity to inspect, copy, or test all documents and tangible objects, including photographs, books, papers, documents, alleged controlled substances, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense, intended for use in the government's case, or were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(E). This request includes ***color photographs of the six-pack photo lineups*** from this case.

(6) <u>Request for Preservation of Evidence.</u> [1] The defendant requests preservation of all physical evidence, ***including dispatch tapes***, that the government or its agents may destroy, lose, or otherwise fail to preserve, and which relates to the arrest or the events leading to the arrest in this case. This request includes, but is not limited to, the results of any fingerprint analyses, the defendant's personal effects, and any other evidence seized from the defendant, or any third party. This request also encompasses a request to preserve for questioning all the people from the car in which defendant was driving. The defendant requests that the Court order at the time of the motions

---

[1] Mr. Moreno includes a proposed order for the preservation of evidence, attached to these motions.

1  hearing that the government preserve all evidence to avoid a future status conference regarding that
2  evidence.

3   (7) <u>Reports Of Examinations And Tests.</u>  The defendant requests the opportunity to inspect
4  and copy any reports of physical or mental examinations, and any scientific tests, which are material
5  to the defense, or intended for use in the government's case. Fed. R. Crim. P. 16(a)(1)(F).

6   (8) <u>Expert Witnesses.</u>  The defendant requests the name, qualifications, and a written
7  summary of the testimony of any person that the government intends to call as an expert witness
8  during its case. Fed. R. Crim. P. 16(a)(1)(G). Mr. Moreno requests that the Court order disclosure
9  of this discovery at least four weeks prior to trial in order to investigate it, to prepare <u>in</u> <u>limine</u>
10 motions in a timely manner, and to prepare adequately for trial.

11   (9) <u>Brady Material.</u>  The defendant requests all documents, statements, reports, and tangible
12 evidence favorable to the defendant on the issue of guilt, which affects the credibility of the
13 government's case, or which may result in a lower sentence under the United States Sentencing
14 Guidelines and/or 18 U.S.C. § 3552. <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Under <u>Brady</u>,
15 impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the
16 accused. <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

17   (10) <u>Giglio Information.</u>  The defendant requests all statements and/or promises, express or
18 implied, made to any government witness in exchange for their testimony in this case, and all other
19 information which could arguably impeach any government witness. <u>Giglio v. United States</u>, 405
20 U.S. 150 (1972).

21   (11) <u>Henthorn Material.</u>  The defendant requests that the government examine the personnel
22 files of all government agents who may testify in this action for <u>Brady</u> material. <u>United States v.</u>
23 <u>Herring</u>, 83 F.3d 1120 (9th Cir. 1996).

24   (12) <u>Informants And Cooperating Witnesses.</u> The defendant requests the name, address, and
25 location of any informants or cooperating witnesses the government used or will use in this case, and
26 in particular, the name, address, and location of any informant who was a percipient witness in this
27 case, or who otherwise participated in the crime charged against Mr. Moreno. <u>Roviaro v. United</u>
28 <u>States</u>, 353 U.S. 52, 61-62 (1957). The government must disclose any information derived from

informants which exculpates, or tends to exculpate, the defendant. Brady v. Maryland, 373 U.S. 83 (1963). The government must also disclose any information indicating bias on the part of any informant or cooperating witness. Id. As Mr. Moreno's co-defendant Jesus Ortiz, might be asked and agree to testify against Mr. Moreno, he hereby asks for any and all Brady information, including *interviews* with Mr. Ortiz and *tape-recorded conversations* from Mr. Ortiz's time in custody at the Imperial County Jail.

(13) Jencks Act Material. The defendant requests, at least two weeks in advance of trial, all material, including dispatch tapes, which the government must produce pursuant to 18 U.S.C. § 3500. Advance production will avoid the possibility of delay at the request of defendant to investigate the Jencks material. Disclosure of this discovery at least two weeks prior to trial will also enable Mr. Moreno to prepare in limine motions in a timely manner and to prepare adequately for trial.

(14) Any Proposed 404(b) Evidence. The defendant requests prior notice of any "other acts" that the government intends to introduce in its case-in-chief, through impeachment, or in its rebuttal case. Fed. R. Evid. 404(b); Fed. R. Evid. 609; United States v. Vega, 188 F.3d 1150 (9th Cir. 1999). Mr. Moreno requests that the Court order disclosure of this discovery at least three weeks prior to trial in order to investigate the "acts," to prepare in limine motions, and to adequately prepare for trial.

(15) Residual Request. Mr. Moreno intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. Mr. Moreno requests that the government provide himer with the above requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

**III**.

**THIS COURT SHOULD EXCLUDE THE IMPERMISSIBLY SUGGESTIVE IDENTIFICATION OF ONE OF THE MATERIAL WITNESSES**

A suggestive pre-trial identification may so taint subsequent out-of-court and in-court identifications that an accused is denied due process of law if the witness is permitted to make the in-court identification. United States v. Love, 746 F.2d 477, 478 (9th Cir. 1984). An unnecessarily

suggestive pre-trial identification procedure will cause identifications to be excluded at trial where the pre-trial procedure was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. Simmons v. United States, 390 U.S. 377 (1968). Once a procedure is established as impermissibly suggestive, the reliability of the subsequent in-court identification of evidence must be analyzed by weighing the indicia of reliability against the indicia of improper influence, that is "the corrupting tendencies of a suggestive pre-trial identification procedure." United States v. Field, 625 F.2d 862, 867 (9th Cir. 1980).

The Ninth Circuit has held that "[c]onvictions based on in-court identifications following a pre-trial identification by photograph will be set aside where the photographic identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." United States v. Barrett, 703 F.2d 1076, 1084 (9th Cir. 1983).

In Simmons v. United States, supra, the Supreme Court extended the lineup decisions of the United States v. Wade, 388 U.S. 218 (1967), and Gilbert v. California, 388 U.S. 263 (1967) to cover the photographic lineup procedure. Photographic identifications must therefore meet the due process standards set forth in Stovall v. Denno, 388 U.S. 293 (1967).

A photographic display should not be arranged so that a particular individual's picture is in some way emphasized. Furthermore, the presentation of a photographic lineup must not be conducted so as to indicate or predispose the identifying party to pick out the accused. Simmons v. United States, supra, at 383. Since counsel was not present at the presentation of the photographic identification and has not been provided color copies of the six-pack used, an evidentiary hearing should be conducted to ensure that the lineups comported with due process standards.

**A.     The Out-of-Court "Identification" in this Case Was Unreliable.**

As with other methods of out-of-court identification, reliability is the lynchpin in determining whether the photographic identification is admissible at trial. Manson v. Brathwaite, 432 U.S. 98, 106 (1977). The Supreme Court has set forth five factors to consider in determining the independent reliability of identification testimony. Neil v. Biggers, 409 U.S. 188 (1972). The factors to be considered are: (1) the opportunity of the witness to view the individual at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description; (4) the level of

1  certainty demonstrated by the witness at confrontation; and (5) the length of time between the crime
2  and time of confrontation. Biggers, 409 U.S. at 199-200. Unless the in-court identification satisfies
3  these criteria, it must be suppressed. In addition, two (2) factors are typically added to the Biggers
4  analysis, which focus on the indices of improper influence: (1) the presence of influence; and, (2)
5  the conduct on the part of the government agents tending to focus the witness' attention on the
6  defendant. United States v. Field, supra, at 866.

7  In the present case, by anyone's account, the material witnesses were able to observe Mr.
8  Moreno in a matter of seconds. Further, they were in the trunk of Mr. Ortiz's vehicle, under
9  extremely stressful conditions, immediately prior to those seconds. Their attention span was certainly
10 limited by the situation. There was no prior contact with Mr. Moreno by either material witness. The
11 level of certainty was minimal at least on behalf of the first material witness, which demonstrates the
12 unreliability of the second material witnesses's identification. Finally, the length of time between the
13 event and identification was also minor, approximately 6 hours by the Border Patrol report.
14 Cumulatively assessed, these factors make the second material witness's identification inherently
15 unreliable under the Biggers analysis. This Court should exclude the photographic lineup as
16 impermissibly suggestive and unconstitutional.

17 **B.    If this Court Does Not Grant this Motion on its Face an Evidentiary Hearing Should Be Held.**
18

19 If this Court does not grant this motion on its face and evidentiary hearing should conducted
20 to determine whether the photo identifications should be admitted. Prior to that hearing, defense
21 counsel should be given color copies of the lineups and be allowed to call a witness to testify as to
22 the identifications. Mr. Moreno requests the Court to hold the evidentiary hearing on the date set for
23 the motion hearing. If not available, he requests an evidentiary hearing at the next possible court date
24 on the Court's calendar.
25 //
26 //
27 //
28 //

## IV.

## THIS COURT SHOULD SUPPRESS EVIDENCE TAKEN IN VIOLATION OF THE FOURTH AMENDMENT

It is the government's burden to establish that the totality of the circumstances attendant to the stop in this case were based upon a reasonable suspicion that criminal activity was afoot. United States v. Sigmond-Ballesteros, 285 F.3d 1117, 1121 (9th Cir. 2002). A reviewing court "must look at the 'totality of the circumstances' of [the] case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002).  There is no information provided in discovery as to the circumstances of the stop of Mr. Ortiz's vehicle,[2] and dispatch tapes have yet to be produced.  Therefore, Mr. Moreno moves for an evidentiary hearing on the issue.  Because there was no warrant for the stop of the vehicle, the government must prove an exception to the warrant requirement existed.  See United States v. Hawkins, 249 F.3d 867, 872 (9th Cir. 2001) (government bears burden of establishing that warrantless vehicle stop comports with Fourth Amendment).

## V.

## THIS COURT SHOULD DISMISS THE INDICTMENT DUE TO A GRAND JURY VIOLATION BECAUSE THE GRAND JURY WAS NOT CHARGED PROPERLY

The Ninth Circuit and the Supreme Court have recently rejected several challenges to the instructions given to grand jurors in the Southern District of California.  See United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc), cert denied 126 S.Ct. 736 (2005). See Ex. A (2006 grand jury charge).  However, it remains outstanding whether the indictment must be dismissed in a case such as this one where the grand jurors are told that they cannot consider penalty information.  See Ex. A at 5-6 (grand jury charge).  Well-settled principles regarding the constitutional function of the grand jury make clear that it must.

The instructions forbidding the grand jurors from considering the potential punishments associated with the offenses they are considering run afoul of Vasquez v. Hillery, 474 U.S. 254

---

[2] Mr. Moreno, as a passenger in the vehicle, has standing to challenge the stop. Brendlin v. California, 127 S. Ct. 2400 (2007).

(1986). These instructions cannot be reconciled with Vasquez's recognition that the grand jury has "the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a non-capital offense[,] all on the basis of the same facts." Vasquez, 474 U.S. at 263. Moreover, punishment information is certainly germane to any assessment of "the need to indict." Id. at 264.

As Judge Hawkins put it, "[i]f grand jurors can choose, per Vasquez, between capital and non-capital offenses, how could they not be influencing the determination of punishment?" Navarro-Vargas, 408 F.3d at 1214 (Hawkins, J., dissenting). Accord Navarro-Vargas, 367 F.3d at 899 (Kozinski, J., dissenting). The instructions here "seek to eradicate this important function." Id. The approval of these instructions conflicts with Vasquez. Because the en banc majority in Navarro-Vargas did not address this challenge, this is an open question.

Moreover, the erroneous instruction is an unlawful exercise of supervisory power over the grand jury. See generally United States v. Williams, 504 U.S. 36 (1992). In evaluating whether a court could order prosecutors to disclose exculpatory evidence to grand jurors as an exercise of supervisory power, the Supreme Court held that "as a general matter at least, no such 'supervisory' judicial authority exists." Williams, 504 U.S. at 47. Indeed, although the supervisory power may provide the authority "to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions,'" id. at 46 (quoting United States v. Mechanik, 475 U.S. 66, 74 (1986) (O'Connor, J., concurring), it does not serve as "a means of *prescribing* such standards of prosecutorial conduct in the first instance." Id. at 47 (emphasis added). It follows, then, that if courts cannot prescribe standards for the conduct of prosecutors, courts have even less authority to prescribe rules purporting to cabin the subject matter of the inquiries and deliberations of grand jurors. See id. at 48 ("[t]he grand jury [is] functional[ly] independen[t] from the Judicial Branch").

The federal courts possess only "very limited" power "to fashion, on their own initiative, rules of grand jury procedure." Id. at 50. In exercising that "very limited" power" courts cannot "reshap[e] ... the grand jury institution, [and] substantially alter[] the traditional relationships between

1  the prosecutor, the constituting court, and the grand jury itself." Id. That is precisely what the
2  instructions here do. See Navarro-Vargas, 367 F.3d at 899 (Kozinski, J., dissenting).

3        The "judicial reshaping" of the grand jury's role is made manifest by the conflicts between
4  the instructions and the Supreme Court's explication of the grand jury's role in Vasquez. By
5  forbidding the grand jurors from considering the desirability of a particular penalty, i.e., preventing
6  them from fulfilling the role described in Vasquez, the district court prevented the grand jury from
7  performing its traditional function. The instruction effects "judicial reshaping of the grand jury
8  institution, [which] substantially alter[ed] the traditional relationships between the prosecutor, the
9  constituting court, and the grand jury itself," Williams, 504 U.S. at 50, by instructing the grand jurors
10 that they could not consider penalty information, even though those grand jurors possess "power to
11 charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most
12 significant of all, a capital offense or a non-capital offense." Vasquez, 474 U.S. at 263. The
13 instructions' "judicial reshaping" of the grand jury is forbidden by Williams.

14 **VI.**

15 **LEAVE TO FILE FURTHER MOTIONS**

16       Mr. Moreno and defense counsel have received 148 pages of discovery and a DVD in this
17 case. As new information surfaces due to the government providing discovery in response to these
18 motions or an order of this court, or through defense investigation, the defense may find it necessary
19 to file further motions, or to supplement existing motions with additional facts. Therefore, defense
20 counsel requests the opportunity to file further motions based upon information gained from
21 discovery.

22 //
23 //
24 //
25 //
26 //
27 //
28

# VII.
## CONCLUSION

For the reasons stated, Mr. Moreno requests that this Court grant his motions.

Respectfully submitted,

Dated: May 22, 2008

*/s/ STEPHEN D. DEMIK*
**STEPHEN D. DEMIK**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Moreno
Stephen_Demik@fd.org

INDEX TO EXHIBITS

EXHIBIT A     JANUARY 2007 GRAND JURY TRANSCRIPT

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

Courtesy Copy Chambers

Copy Assistant U.S. Attorney via ECF NEF

Copy Defendant

Dated:  May 22, 2008               s/ *STEPHEN D. DEMIK*
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467  (tel)
(619) 687-2666  (fax)
Stephen_Demik@fd.org (email)