**STEPHEN D. DEMIK**
Cal. State Bar No. 221167
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
Telephone: (619) 234-8467

Attorneys for Mr. Moreno, Jr.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE ROGER T. BENITEZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ARTURO MORENO, JR. (2),<br><br>　　　　Defendant. | Case No. 08CR0546-RTB<br><br>DATE:　September 15, 2008<br>TIME:　2:00 p.m.<br><br>**STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS** |

**I.**

**STATEMENT OF FACTS**

On February 13, 2008 Mr. Jesus Ortiz, Jr. (D1) drove a red 1999 Chrysler CV to the Calexico East Port of Entry. Mr. Ortiz was the driver and sole occupant of the vehicle. While at the P.O.E., Mr. Ortiz claimed to have owned the Chrysler for five years and crossed the border frequently. Mr. Ortiz drove through secondary inspection without stopping, although Mr. Ortiz claimed there was a mis-communication and he did not intentionally run the port.

In response, Border Patrol agents called the Calexico Police Department for assistance. They came upon Mr. Ortiz driving the Chrysler near his residence. The Calexico officers arrested Mr. Ortiz along with Mr. Arturo Moreno, Jr. was riding as a passenger in the Chrysler at the time. Two individuals, later identified as undocumented without permission to be in the United States, were in the rear of the Chrysler. These two individuals are now designated material witnesses in this case.

1    Mr. Moreno was arrested and brought to the P.O.E. along with the other three individuals. After being
2 read his rights, Mr. Moreno invoked them and was not questioned. Mr. Ortiz gave videotaped statements to
3 the agents. He said that he picked up the two material witnesses at a local McDonald's because they asked for
4 a ride to Heber, CA. Mr. Ortiz denied knowing that the material witnesses were illegal and claimed that he
5 did not place anyone in the trunk of his Chrysler.

6    The two material witnesses were both interviewed at the POE. Both were coming from Mexicali into
7 the United States. In substance, they claimed that a man driving a red convertible placed them in the trunk
8 of the vehicle. They were then crossed into the United States and taken out of the vehicle, where there were
9 two men present. One of the material witnesses states that the driver, Mr. Ortiz, instructed them to tell agents
10 they were getting a ride to Heber.

11   On February 27, 2008 Mr. Moreno, Jr. was indicted with four counts of violations of 8 U.S.C. §§
12 1324(a)(2)(B)(ii) and (iii), and 18 U.S.C. § 2 involving the smuggling of an alien into the United States for
13 financial gain and aiding and abetting.

## II.

## THIS COURT SHOULD PRECLUDE THE GOVERNMENT FROM PRESENTING HEARSAY STATEMENTS ABOUT SMUGGLING ARRANGEMENTS UNDER *CRAWFORD*

17   The Confrontation Clause forbids the use of hearsay against a criminal defendant at trial, if the defendant
18 is not afforded the right to confrontation. See Crawford v. Washington, 124 S. Ct. 1354 (2004). Under Fed.
19 R. Evid. 802, hearsay statements are inadmissible unless one or more hearsay exceptions apply. When a
20 statement involves multiple levels of hearsay, each level must be independently admissible for the statement
21 to come into evidence. Fed. R. Evid. 805.

22   Here, the two material witnesses told agents that a third person, "Edgar" made all of the arrangements
23 for them to be smuggled into the United States with two other unknown *females*. The material witnesses did
24 not personally make any arrangements, and did not make any payments at any point. Thus, anything that the
25 material witnesses may know about financial arrangements comes not from their own knowledge, but from
26 two levels of hearsay: first, what "Edgar" said to them; and second, what the two female "smugglers"
27 allegedly told Edgar. The material witnesses' friend "Edgar", who apparently made all of the arrangements,
28 is not expected to testify at trial. Thus, Mr. Moreno will be deprived of his opportunity to confront these

"unknown persons," whether "Edgar" or the females, about the alleged financial arrangements. Admission of statements through the material witness will accordingly violate Mr. Moreno's Sixth Amendment confrontation rights, and the admission of these statements would further violate the hearsay rules. This Court should exclude these statements at trial.

### III.

### THIS COURT SHOULD PRECLUDE THE ADMISSION OF 404(B) AND 609 EVIDENCE

Rule 404(b) requires that the government provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce. Fed. R. Evid. 404(b). The notice requirement is triggered when timely requested by the defendant. United States v. Vega, 188 F.3d 1150, 1154 (9th Cir. 1999). Mr. Moreno has received no notice of any 404(b) evidence that the government intends to introduce at trial. Even assuming there was some type of "constructive notice," it is deficient for three reasons: (1) any dates or times of alleged events (i.e. alleged prior smuggling acts of Mr. Moreno), (2) the means or method or any other details of these alleged events (i.e. what kind of car was used, who or what was smuggled, origin and destination, etc.), or (3) corroborating evidence of these alleged acts (i.e. TECS records). Such "constructive notice" is clearly insufficient under the terms of Rule 404(b). Therefore, it is Mr. Moreno's position that the government should be precluded from introducing such evidence without proper notice.

Under Rule 609, evidence of prior convictions are usually admissible only under certain circumstances and in the discretion of the court, as well. Here, Mr. Moreno timely requested notice of proposed Rule 404(b) and Rule 609 evidence in her discovery requests to the government. In the event that the government indicates an intention to introduce 609 evidence, it is Mr. Moreno's position that there is no appropriate 609 evidence. Mr. Moreno requests an opportunity to revisit this issue should the government indicate an intention to introduce 609 evidence.

### IV.

### THIS COURT SHOULD ALLOW VOIR DIRE OF ANY EXPERT WITNESSES OFFERED BY THE GOVERNMENT OR DEFENSE

Thus far, the government has given no notice of any expert witness testimony, nor has Mr. Moreno. If the government (or either party) seeks to offer expert testimony, they must (1) timely notify the opposing party at their earliest convenience of the expert and his or her qualifications; (2) provide a summary of the expected

testimony; and (3) provide a summary of the bases of the expert's opinion. Mr. Moreno respectfully requests that this Court grant a motion *in limine* accordingly, to give effect to the discovery requirements of Rule 16, and to afford the accused the opportunity to prepare his defense in this case. Since trial is set less than two weeks away, Mr. Moreno requests that either side be allowed the opportunity to voir dire any proffered expert in this case.

## V.

## THE COURT SHOULD NOT SEND THE INDICTMENT INTO THE JURY ROOM DURING DELIBERATIONS

In the commentary to Model Instruction 3.2.1, "Charge Against Defendant Not Evidence," the Committee on Model Jury Instructions, in the Ninth Circuit Manual of Model Jury Instructions, strongly recommends that the indictment not be sent into the jury room during deliberations. The commentary observed that neither the Federal Rules of Criminal Procedure, nor case law, require sending a copy of the indictment to the jury room because the indictment is not evidence.

Mr. Moreno urges this Court to follow the Committee's guidance. The language in the instant indictment "tracks" the language of the charged statutes. Accordingly, it is probable that jurors will be persuaded by the similarities alleged in the indictment returned by the grand jury and the elements which must be proven in the charged statutes. Furthermore, the indictment recites that "the grand jury charges," and this could persuade those jurors without experience with the grand jury system that another jury had already found Mr. Moreno guilty. Mr. Moreno also requests that this Court caution the jury that the indictment is not evidence. See United States v. Utz, 886 F.2d 1148, 1151-1152 (9th Cir. 1989).

## VI.

## THIS COURT SHOULD ALLOW ATTORNEY-CONDUCTED VOIR-DIRE

Pursuant to Rule 24(a), Federal Rules of Criminal Procedure, to provide effective assistance of counsel and to exercise Mr. Moreno's right to trial by an impartial jury, defense counsel requests the opportunity to personally voir dire the prospective members of the jury.

The Ninth Circuit Jury Trial Improvement Committee which was adopted by the Ninth Circuit Judicial Council has issued recommendations for district courts conducting jury trials. Recommendation VIII is that

"After court-conducted voir dire attorneys should be permitted to conduct supplemental voir dire."[1] Mr. Moreno urges the Court to follow this recommendation and allow ten minutes of attorney-conducted voir dire.

## VII.

## THIS COURT SHOULD ORDER PRODUCTION OF GRAND JURY TRANSCRIPTS

The Court should order production of grand jury transcripts when the defense can show a particularized need. The particularized need present in this case is that a witness may have testified before the grand jury, who will likely testify at Mr. Moreno's trial. The government must produce a transcript of a witness' testimony before the grand jury following the direct examination of a witness at trial. 18 U.S.C. § 3500; Dennis v. United States, 384 U.S. 855 (1966); Fed. R. Crim. 26.2(f)(3). The defense requests that the government make such transcripts available in advance of trial to facilitate the orderly presentation of evidence and to remove any need for recess in the proceedings for defense counsel to examine the statements pursuant to Fed. R. Crim. P. 26.2(d).

Additionally, Mr. Moreno moves for the production of grand jury transcripts, even if the grand jury witness *does not* testify at trial. If the government's grand jury witness was not the case agent in this case, that witness likely testified based upon information provided by other agents. The government has, thus, adopted the witness' grand jury testimony by "manifest[ing] an adoption or belief in its truth." See Fed. R. Evid. 801(d)(2)(B). The grand jury testimony also constitutes an admission "by a person authorized by the party to make a statement concerning the subject matter," see Fed. R. Evid. 801(d)(2)(C), and constitutes "statement[s] by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," see Fed. R. Evid. 801(d)(2)(D).

Furthermore, to the extent that any of the grand jury testimony in this case is in any way inconsistent with the testimony adduced at trial, the grand jury testimony constitutes exculpatory impeachment evidence. See Giglio v. United States, 405 U.S. 150 (1972). As discussed above, such evidence would be admissible as an adoptive admission pursuant to Rule 801(d)(2). At a minimum, this Court should conduct an *in camera* review of the grand jury testimony and order the transcript produced if it contains any testimony that might

---

[1] The text can be found at http://www.ce9.uscourts.gov/publications/FINALSecondReport.pdf?OpenDocument

be Brady material, or otherwise subject to production, as explained above.

## VIII.

## THIS COURT SHOULD ALLOW EACH JUROR TO HAVE A SEPARATE COPY OF THE APPROVED JURY INSTRUCTIONS

Juries consist of lay people, who are required to follow the law. Their responsibility becomes more difficult when all twelve jurors have access to only one copy of the instructions. Often, each juror does not have an opportunity to even read or understand the critical instructions. Consequently, jurors fail to understand the government's burden of proving a case beyond a reasonable doubt and the defendant's constitutional right not to testify and present evidence in his own defense.

In this case, there are numerous elements the government must prove to convict Mr. Moreno. Although this Court will instruct the jury on each of these elements, each juror also should be provided a written copy of the jury instructions, so that each juror may properly, effectively, and efficiently perform his or her function of determining whether the government has proven *each* element beyond a reasonable doubt.[2]

## IX.

## THE COURT SHOULD PRECLUDE THE PROSECUTION AND ITS WITNESSES FROM IMPERMISSIBLY VOUCHING AT TRIAL

Impermissible vouching must not be allowed during the government's case-in-chief, rebuttal or during the government's closing argument. "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony" See United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir.1993). The Supreme Court has held:

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; *and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.*

---

[2] Mr. Moreno is willing to pay the costs for the additional copies of the jury instructions. Defense counsel is willing to make the copies, as well.

Berger v. United States, 295 U.S. 78, 88-89 (1935).  Similarly, the Ninth Circuit has "consistently cautioned against prosecutorial statements designed to appeal to the passions, fears and vulnerabilities of the jury . . . ."  United States v. Weatherspoon, 410 F.3d 1142, 1149 (9th Cir. 2005).  As the Ninth Circuit has explained:

> A prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking. The evil lurking in such prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence. Jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem. The amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear.

United States v. Koon, 34 F.3d 1416, 1443 (9th Cir.1994), quoting United States v. Monaghan, 741 F.2d 1434, 1441 (D.C. Cir.1984).

It is also impermissible for government agents to vouch for themselves or each other.  In United States v. Rudberg, 122 F.3d 1199, 1204 (9th Cir. 1997), the Ninth Circuit held that vouching can occur through the testimony of a government agent because the jury might easily identify the agent's position with the integrity of the United States.  In fact, the Court noted that when that happens, vouching occurs in a "very powerful form."  Id.  Mr. Moreno requests the Court prohibit such impermissible vouching in his trial to ensure its fairness.[3]

**X.**

**THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM SOLICITING TESTIMONY REGARDING MR. MORENO'S POST-*MIRANDA* SILENCE**

Mr. Moreno moves to preclude the government from soliciting testimony regarding his post-Miranda silence as substantive evidence of guilt or impeachment.  In Doyle v. Ohio, 426 U.S. 610, 96 S. Ct. 2240, 49 L.Ed.2d 91 (1976), the Court held that "the use for impeachment purposes of [a defendant's] silence, *at the time of arrest* and after receiving Miranda warnings, violate[s] the Due Process Clause of the Fourteenth Amendment."  Id. at 619, 96 S. Ct. 2240 (emphasis added).  In Doyle, the prosecutor used testimony about a defendant's post-Miranda silence to impeach the defendant at trial.  The Supreme Court

---

[3] This request includes any extra-testimonial vouching, such as uniforms and/or emblems. Specifically, should Jesus Ortiz, Jr. testify at trial, Mr. Moreno asks the Court to prohibit him from wearing a military uniform or other clothing or indicia used to boster his credibility before the jury.

held that the right to remain silent contains an implicit assurance "that silence will carry no penalty." Id. at 618, 96 S. Ct. 2240. "[I]t would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." Id. Based on the preceding, all evidence of any post-arrest silence by Mr. Moreno should be excluded.

## XI.

## IF APPLICABLE, THE COURT SHOULD SEVER DEFENDANTS

The Supreme Court has declared that due process and Fed. R. Crim. P. 14 mandate separate trials for defendants joined under Rule 8 if the facts of the case would "prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). "Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty." Id.

In assessing whether joinder is prejudicial, of foremost importance is whether the evidence as it relates to the individual defendant is easily compartmentalized. United States v. Patterson, 819 F.2d 1495, 1501 (9th Cir. 1987); United States v. DeRosa, 670 F.2d 889, 898 (9th Cir.), cert. denied, U.S. 993, 103 S. Ct. 353 (1982). The most common reason for severing a trial is where codefendants present mutually exclusive or irreconcilable defense. United States v. Rucker, 915 F.2d 1511, 1513 (11th Cir. 1990) (where two codefendants whose vehicle contained a gun and cocaine each claim ignorance about contraband, jury would be unable to believe testimony of either defendant without disbelieving codefendant's testimony). Severance has been granted when the charges brought against the defendants or weight of the evidence supporting each charge is wholly disparate or disproportionate. United States v. Sampol, 636 F.2d 621, 642-51 (D.C. Cir. 1980) (severance required where vast bulk of testimony was about codefendants' assassination charge, where testimony was gruesome, where no curative jury instructions were given, where confusion of charges and evidence was likely, and where defendant was not permitted to cross-examine some witnesses); United States v. Donaway, 447 F.2d 940, 943 (9th Cir. 1971) (severance required where government's case covered more than 2,300 pages of transcripts, less than 50 of which were relevant to Donaway). The Ninth Circuit has held that the district court should sever defendants who

have mutually exclusive defenses so long as there exists clear and manifest prejudice. United States v. Tootick, 952 F.2d 1078, 1083 (9th Cir. 1991). "Mutually exclusive defenses are said to exist when acquittal of one codefendant would necessarily call for the conviction of the other. The prototypical example is a trial in which each of two defendants claims innocence, seeking to prove instead that the other committed the crime. Id., at 1081 (citation and internal quotations omitted).

The Zafiro court has also advocated severance "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants." 506 U.S. at 539. "Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice." Id. (citing Bruton v. United States, 391 U.S. 123 (1968)).

Mr. Moreno also seeks severance if the Court were to disregard the strictures of the Sixth Amendment and admit Mr. Ortiz's post-arrest statements in their joint trial. See Crawford v. Washington, 124 S.Ct 1354 (2004); Lilly v. Virginia, 527 U.S. 116, 123-24 (1999).

## XII.

## THIS COURT SHOULD GRANT LEAVE TO FILE OTHER MOTIONS

To the extent that there is outstanding discovery that the government has not yet produced, or the interest of fairness or judicial economy otherwise require it, Mr. Moreno requests leave to file further motions *in limine* as may be necessary.

## XIII.

## CONCLUSION

For the foregoing reasons, Mr. Moreno respectfully requests that the Court grant the above motions *in limine*.

Respectfully submitted,

*/s/ Stephen D. Demik*

DATED:   September 8, 2008

**STEPHEN D. DEMIK**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Moreno