KAREN P. HEWITT
United States Attorney
RANDY K. JONES
Assistant U.S. Attorney
California State Bar No. 141711
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5684

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 08CR0546-BEN |
| Plaintiff, | Date: September 16, 2008<br>Time: 9:00 a.m. |
| v. | **GOVERNMENT'S TRIAL MEMORANDUM** |
| JESUS ORTIZ (1),<br>ARTURO MORENO (2) | |
| Defendants. | |

COMES NOW the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Randy K. Jones, Assistant United States Attorney, and hereby files its Trial Memorandum in the above-captioned case. Said memorandum is based upon the files and records of this case.

**I**

**STATEMENT OF CASE**

**A.** **Indictment**

On February 27, 2008, a federal grand jury returned a four-count Indictment charging Defendants Jesus Ortiz ("Ortiz") and Arturo Moreno ("Moreno"), with bringing in illegal aliens for financial gain and aiding and abetting, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2

(Counts One and Three); and bringing in illegal aliens without presentation and aiding and abetting, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii) (Counts Two and Four).

On February 28, 2008, the defendants were arraigned on the Indictment and entered pleas of not guilty.

On April 21, 2008, Ortiz filed his pre-trial motions for discovery and to for leave to file further motions. On May 22, 2008, Moreno filed his pre-trial motions for discovery; to suppress impermissibly suggestive identification; to dismiss the indictment due to misinstruction of the grand jury; to suppress evidence under the Fourth Amendment; and for leave to file further motions.

On June 30, 2008, the Government filed its response and opposition to defendants' motions, along with its motion for reciprocal discovery.

On August 18, 2008, the Court denied the defendants' motions and granted the Government's motion for reciprocal discovery.

**B.     Trial Status**

Trial is scheduled for Tuesday, September 16, 2008 at 9:00 a.m., before the Honorable Roger T. Benitez. The United States expects that its case-in-chief will last one day.

**C.     Status of Counsel**

Defendant Ortiz is represented by appointed counsel, Knut S. Johnson. Defendant Moreno is represented by appointed counsel, Stephen D. Demik, Federal Defenders, Inc.

**D.     Custody Status**

The defendants are currently in custody.

**E.     Interpreter**

The United States will need a court certified Spanish language interpreter for its material witness. The defendants will also need a Spanish interpreter.

**F.     Jury Waiver**

The defendants have not waived their right to a trial by jury.

//
//
//

**G.    Motions in Limine**

On September 8, 2008, Moreno filed his motions in limine to: exclude hearsay statements about supposed financial arrangements; exclude 404(b) and/or 609 evidence; exclude any expert testimony; prevent copy of the indictment from being submitted during deliberations; allow attorney conducted voir dire; disclose grand jury transcripts; provide separate copy of the jury instructions for each juror during deliberations; prohibit impermissible vouching; preclude evidence of any post-arrest silence; sever defendants; and for leave to file further motions.

On September 11, 12008, the United States filed its response and opposition to Moreno's motions in limine.

**H.    Stipulations**

There have been no stipulations filed at this time.

**I.    Discovery**

The United States has complied and will continue to comply with its discovery obligations. The defendants have not provided any reciprocal discovery.

**II**

**STATEMENT OF FACTS**

**A.    Incident**

On Wednesday, February 13, 2008, at approximately 9:00 p.m., Ortiz entered the United States at the Calexico, California East Port of Entry as the driver, sole occupant, and registered owner of a red 1999 Chrysler Sebring convertible. During primary inspection, Ortiz stated he was a United States citizen and presented a California driver's license as identification. Ortiz told United States Customs and Border Protection Service Officer (CBPO) Maria Salazar that he was not bringing anything into the United States. Ortiz' name was queried in the TECS record system and came back negative. Ortiz told Officer Salazar that he had been in Mexico visiting his grandmother. Officer Salazar noticed the car had only crossed one time before. Ortiz stated that he had owned the car for five years. Officer Salazar asked Ortiz if he crossed the border in the car frequently, and Ortiz said that he did. Based on this information, Officer Salazar referred Ortiz and the car to secondary inspection.

After Officer Salazar placed the referral slip on the windshield of the car, she told Ortiz to drive to the secondary lot. Officer Salazar asked Ortiz if he knew where the lot was. Ortiz said, "yes, straight ahead." Officer Salazar watched as Ortiz drove toward the secondary lot. As Ortiz got closer to the entrance of the secondary lot, he quickly veered the car northbound and "ran the port." Officer Salazar tried to contact someone in the secondary lot to stop the car but was unable to reach anyone in time.

The Calexico Police Department was called to assist in locating the car. A description of the Ortiz' car was transmitted over police radio. About 15 minutes later, Calexico Police Officer Mario Alcazar saw the car near Ortiz' residence. Ortiz was the driver and Moreno was the passenger. There were two other passengers riding in the back seat of the car. Ortiz parked the car in his driveway. All four occupants were removed from the car and taken back to the port of entry. Further investigation revealed that the two passengers were undocumented aliens from Mexico who had been smuggled into the United States in the vehicle.

Ortiz was later identified by Officer Salazar as the driver of the car that fled the port of entry.

### B. Criminal and Immigration History

A subsequent records check revealed that Ortiz did not have a prior criminal or immigration record. The records check revealed that Moreno has a prior 2003 arrest for alien smuggling at the Calexico, California Port of Entry, but prosecution was denied. Moreno also has several DUI convictions.

### C. Post Miranda Statements

On February 14, 2008, at approximately 4:14 a.m., Ortiz was placed under arrest and advised of his Miranda rights by CBPO Leticia Casillas. Ortiz stated he understood his rights and agreed to answer questions without an attorney being present. Ortiz gave the following statement:

> He went to Mexicali, Mexico, to a restaurant, to make a reservation and claimed he was traveling alone. When he arrived at the port of entry, the primary officer questioned him and referred him to secondary. On his way to secondary, he decided to bypass secondary. Since no one told him to stop and he figured that if the officers really wanted him to go to secondary they would have stopped him or called him back. He drove to Moreno's home in Calexico and called Moreno on the phone to come outside. They drove to a McDonald's restaurant in Calexico. Upon arrival the restaurant, they were approached by two individuals who asked for a ride to Heber, California. He and Moreno agreed to give them a ride. Instead of going

into the restaurant, they drove the individuals to Ortiz' home to pick up his car and drop off his sister's car. Upon arrival at his home, they were arrested by the Calexico Police at gunpoint.

At approximately 5:45 a.m., Officer Casillas placed Moreno under arrest and advised him of his Miranda rights. Moreno stated he understood his rights and invoked.

### D. Material Witnesses' Statements

Material Witness Erik Esquivel-Prado ("Esquivel"), in a videotaped interview, stated among other things that:

He was a citizen and native of Mexico with no legal entry documents to enter, reside or pass thru the United States. He arrived in Mexicali on February 12, 2008, at the Mexicali airport with two other friends, a female named, Veronica and his brother in law. Upon arriving to Mexicali, they took a cab to a shopping enter somewhere in Mexicali to a store named "Ley" to wait for a person whom his brother in law had arranged to help them gain entry into the U.S. A green four door vehicle showed up with two females. He and his two companions got in the vehicle with the two females, and they drove to an unknown street where the car pulled over and everyone exited the car except for the female driver. From there they traveled by bus to a Wal-Mart then to downtown Mexicali. A female named Bertha then took them to her house where she put out a mattress for them to sleep on. The next day, they woke up, had breakfast and in the afternoon Bertha took them back down town til about 9:00 pm, when another car showed up with a male driver. They were then told to go with the male driver who drove them to a liquor store. The male then exited the vehicle and went to talk to another male who was in a red convertible. When the man came back to the car, he told him that they were going to get in another vehicle. They left that location, traveled though various streets and came to a street that was not very well lit. They were instructed to get out of the car and the driver of the red convertible opened the trunk and the driver of the other car told him and the female to get in the trunk. His brother in law stayed behind. He was told by the males to stay quiet. The car then began to move and all he could hear was the radio playing. The radio was then lowered and he heard a voice asking questions which appeared to be in the English language. The car began to move again but this time the car went fast. It felt like the car went out of control. He was scared and his legs began to feel numb and he started to bang on the trunk and yelled "get us out" and the car would go fast, then stop, then drive fast again. The car stopped and it sounded like someone either got in or out of the car. He yelled again and he heard two voices say "calm down we are going to get you out". The car then stopped in what appeared to be a cul-de-sac and they were let out of the trunk. There was now another male who he had not seen when he first got in trunk. They were put in the back seat of the vehicle. It was about fifteen minutes from the time he started to bang on the trunk to the time he was let out of the trunk. Once in the back seat of the vehicle, the two males offered them water. He asked if they were already in the U.S. and both males answered "yes", then a police car drove by and the passenger told the driver to keep driving. The police car turned around and pulled up behind them and shined the lights on the car. He was told by the driver and passenger to say that they picked them up at McDonald's and asked them for a ride. The police instructed all of them in the car to get out one by one and then the Border Patrol came and brought them to the port. He was going to pay between $3000 and $4000 to be smuggled into the U.S. and that once in Calexico, he was going to be turned over to another female and then taken to Los Angeles, California and then to Sacramento, California, where he was to live with friends.

//

//

Esquivel was presented with two photo line-ups, #1 and #2. On photo line-up #1, Esquivel corrected identified photo #1, defendant Moreno as the passenger. On photo line-up #2, Esquivel correctly identified photo #4, defendant Ortiz as the driver and the person who placed him in the trunk of the car in Mexico prior to their arrival at the port of entry. Esquivel identified Moreno as being present when he was removed from the trunk of the car. Esquivel stated that both Ortiz and Moreno instructed he and the other material witness to tell the officers that they were picked up at the McDonald's restaurant and that they had asked for a ride to Heber, California.

Material Witness Veronica Perez-Castilleja ("Perez"), in a videotaped interview, stated among other things that:

> She was a citizen and native of Mexico with no legal entry documents to enter, reside or pass thru the United States. She arrived to Mexicali by plane from Mexico with two friends, Erik and Edgar, her boyfriend. From the airport she took a cab to a shopping center to wait for a female who was going to help them gain entry into the U.S.. Edgar made the arrangements with the female and later two females showed up and took them downtown with one of the females, named Bertha. Later that night they went to Bertha's house to sleep. The next day they went back to the shopping center and Bertha made calls and a male arrived. They went in his car, Edgar stayed behind. They left Bertha and went with the male who then took them to a liquor store. The male got out of the car and went to talk to a guy in a red convertible. They left there and went to another street and parked. The male told her to get out of the car and go to the car with the guy in the red convertible. The guy said "Hi" and he opened the trunk. She got in and then she got out so that her friend Erik could get in and then she went back in the trunk. Both males were there when they were placed in the trunk. Both men closed the trunk. The first male said don't move or make any noise. The car began to move and all she could hear was the radio and then she heard a women's voice and stated that she figured they were at the port of entry to the U.S. The car advanced fast and she felt a hard hit like a speed bump. She said her legs felt numb. Erik hit the trunk and said "open it". Later the car stopped. The car door closed again the began to move. A while later, the car stopped again and they opened the trunk and now there were two guys. The driver, the one she saw in Mexicali, told her to get out and asked if they were okay. The passenger told them that they were already in the U.S. They asked them if they wanted water. They got in the back seat of the car and the car started moving. Later they saw a police car coming towards them and pass them. The guy pulled into a house and said the police are coming back. He told them to say that they picked us up at Mc Donald's and that we don't know them. She asked them what she should say if the police asked where they were going. The driver said to tell them they were going to Heber. The police stopped them and told them to get out first. She asked the passenger where do I say she was going again, and he said Heber. They were all instructed to get out of the car one by one. The officers dressed in green brought them to the port/ She said they were going to pay between $3000 and $4000 USD to be smuggled into the U.S.

Perez was presented with two photo line-ups, #1 and #2. On photo line-up #1, Perez correctly identified photo #5, defendant Ortiz, as the driver, and on photo line-up #2, Perez correctly identified photo #3, defendant Moreno, as the passenger. Perez identified Ortiz as the person who placed him in the trunk of the car in Mexico prior to their arrival at the port of entry. Perez identified Moreno as

being present when she was removed from the trunk of the car.  Perez stated that Ortiz and Moreno told her and Esquivel that the police were coming and instructed them to tell the officers that they were picked up at the McDonald's restaurant and that they had asked for a ride to Heber, California.

### III

### PERTINENT LAW

A. BRINGING IN ILLEGAL ALIENS FOR FINANCIAL GAIN

The essential elements of a violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii) are that:

1. defendant knowingly and intentionally brought a person to the United States;
2. the person was an alien who had not received prior official authorization to come to, enter or reside in the United States;
3. defendant knew or acted in reckless disregard of the fact that the person was an alien who had not received prior official authorization to come to, enter, or reside in the United States;
4. defendant brought the alien to the United States for the purpose of commercial advantage or private financial gain; and
5. defendant acted with the intention of violating the immigration laws of the United States.

B. BRINGING IN ILLEGAL ALIENS WITHOUT PRESENTATION

The essential elements of a violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii) are that:

1. defendant knowingly and intentionally brought a person to the United States;
2. the person was an alien who had not received prior official authorization to come to, enter or reside in the United States;
3. defendant knew or acted in reckless disregard of the fact that the person was an alien who had not received prior official authorization to come to, enter, or reside in the United States;
4. that upon arrival in the United States or at the port of entry, defendant did not immediately bring and present the alien to an appropriate immigration officer at a designated port of entry; and
5. defendant acted with the intention of violating the immigration laws of the United States.

//

//

C.     AIDING AND ABETTING BRINGING IN AN ILLEGAL ALIEN FOR FINANCIAL GAIN

The essential elements of a violation of Title 18, United States Code, Section 2 are that:

1. someone brought an illegal alien to the United States;

2. defendant knowingly and intentionally aided, counseled, commanded, induced or procured that person to commit the bringing in or transportation of aliens;

3. the offense was committed for the purpose of someone receiving financial gain; and

4. defendant acted before the crime was completed.

## IV

## ANTICIPATED LEGAL ISSUE

A.     THE COURT SHOULD ALLOW ARGUMENT THAT THE DEFENDANTS NEED NOT ACT FOR THEIR OWN PERSONAL GAIN

The plain language of Section 1324(a)(2)(B)(ii) requires only that the offense be done for the purpose of commercial advantage or private financial gain–not that the defendant himself acted for that reason. See 8 U.S.C. § 1324(a)(2)(B)(ii) (describing "an offense done for the purpose of commercial advantage or private financial gain"). The "offense done" is bringing aliens to the United States or attempting to bring aliens to the United States as defined in Section 1324(a)(2). Accordingly, the United States need not prove that Defendant himself acted "for the purpose of commercial advantage of private financial gain."

> In United States v. Angwin, 271 F.3d 786, 805 (9th Cir. 2001), the Ninth Circuit found that: The statute [8 U.S.C. § 1324(a)(2)(B)(ii)] does not require evidence of an actual payment or even an agreement to pay. It merely requires that the offense was done for the purpose of financial gain. Given [the smuggled alien's] testimony that he expected that he would have to pay for his transportation once he arrived in Los Angeles, the substantial evidence of the defendant's guilt, and the lack of any other possible explanation for Angwin's conduct, the evidence was more than sufficient for a rational jury to conclude beyond a reasonable doubt that Angwin committed the offense for the purpose of private financial gain.

In United States v. Tsai, 282 F.3d 690, 697 (9th Cir. 2001), the Ninth Circuit stated that "[b]ecause [the defendant] was charged as an aider and abettor under 18 U.S.C. § 2, the government could make out this [financial gain] element merely by proving that a principal -- not necessarily [the defendant] himself -- committed the crime with a pecuniary motive; it need not show 'actual payment or even an agreement to pay.'"

In its most recent decision on this issue, the Ninth Circuit reaffirmed its holding in <u>Tsai</u> that a conviction under § 1324(a)(2)(B)(ii) may be "based on intent [to] financially [] benefit someone other than the defendant" where the United States proceeds under a theory of aiding and abetting. <u>United States v. Munoz</u>, 2005 WL 1405702, *2 (9th Cir. 2005) (the Ninth Circuit held "that, in order to impose § 1324(a)(2)(B)(ii)'s enhanced penalties on a defendant prosecuted as a principal, the government must prove that she intended to derive a financial gain from the transaction").

As the cases above demonstrate, when the United States proceeds on a theory of aiding and abetting, 8 U.S.C. § 1324(a)(2)(B)(ii) requires that the United States prove only that somebody brought an alien to the United States for the purpose of commercial advantage or financial gain -- not that a defendant acted for his or her own *personal* profit. Thus, in the instant case, when proceeding under a theory of aiding and abetting, the United States is not required to prove that either Defendant was a principal in the illegal alien smuggling and transportation scheme, or that either Defendant committed these offenses with a personal pecuniary motive. As such, the United States respectfully requests that the Court permit this argument to the jury.

## V

## **WITNESS LIST**

The Government may call the following witnesses in its case in chief, but reserves the right to call fewer or more witnesses, as necessary:

1. United States Customs and Border Patrol Officer Maria Salazar
2. United States Customs and Border Patrol Agent Leticia Casillas
3. Calexico Police Department Officer Mario Alcazar
4. Erik Esquivel-Prado (material witness)
5. Veronica Perez-Castilleja (material witness)

//
//
//
//
//

# VI

# **EXHIBIT LIST**

The United States will provide an exhibit list on the morning of trial. Presently, the United States intends to offer into evidence the following physical evidence:

1. Photograph of car
2. Referral slip
3. Photo lineup #1
4. Photo Lineup #2
5. Area map

The United States will provide the defendants with a copy of all exhibits in discovery. The United States will make its exhibits available to defendants for examination in advance of trial. The United States requests an opportunity to examine defendants' exhibits before trial.

# VII

# **PROPOSED VOIR DIRE**

The United States requests that the following voir dire questions be addressed to the jury panel in addition to the Court's standard jury questions:

1. Is anyone had an unpleasant experience with any law enforcement personnel?
2. Has anyone had any disputes with any agency of the United States Government?
3. Does anyone have strong feelings about the Border Patrol, or the INS, the Immigration and Naturalization Service?
4. Does anyone believe that immigration laws are too harsh?
5. Does anyone believe anyone who wants to should be allowed to come enter the United States without any restrictions?
6. Does anyone believe that it should not be illegal to help a person without legal documents or authorization to enter the United States without authorization?
7. Does everyone understand that it is your duty is to apply the law regardless of whether you disagree with it?

8. Does anyone here know the difference between direct and circumstantial evidence? Direct means that a fact was observed. Circumstantial means that a fact may be inferred.

9. Does everyone understand that as a juror you are not to consider prejudice, pity or sympathy in deciding whether the Defendant is guilty or not guilty?

10. Does anyone have any strong religious or moral beliefs that would make it difficult for you to pass judgment on another person and decide whether that person is guilty of the charges if the evidence shows the person is guilty?

11. Does everybody understand that both the defendant <u>and</u> the Government are entitled to a fair trial?

12. The law requires the government to prove its case against the defendant beyond a reasonable doubt. If you are selected, would you want the government to prove its case by a higher standard of proof, say beyond any possible doubt?

The United States respectfully reserves the right to submit additional questions prior to trial.

## VIII

## **JURY INSTRUCTIONS**

The United States will file its proposed jury instructions under separate cover.

Dated: September 11, 2008

                                      Respectfully submitted,

                                      KAREN P. HEWITT
United States Attorney

S/ Randy K. Jones

RANDY K. JONES
Assistant U.S. Attorney

|   |   |   |
|---|---|---|
| 1 | UNITED STATES DISTRICT COURT | |
| 2 | SOUTHERN DISTRICT OF CALIFORNIA | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR0546-BEN |
| Plaintiff, | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| JESUS ORTIZ (1), ARTURO MORENO (2), | ) | |
| Defendants. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, RANDY K. JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Response and Opposition to Defendants' Motions to Compel Discovery, Suppress Impermissibly Suggestive Identification, Suppress Evidence, Dismiss the Indictment and for Leave to File Further Motions Together with Statement of Facts and Memorandum of Points and Authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**1. Knut S. Johnson**     E-mail: **Knut@knutjohnson.com**
**2. Stephen D. Demik**    E-mail: **Stephen_demik@fd.org**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 11, 2008

                                                s/ Randy K. Jones
                                                RANDY K. JONES