KAREN P. HEWITT
United States Attorney
RANDY K. JONES
Assistant U.S. Attorney
California State Bar No. 141711
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-5684; (619) 557-7381
randy.jones2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ARTURO MORENO, JR. (2)<br><br>Defendant. | Criminal Case No. 08CR0546-BEN<br><br>Date:  September 15, 2008<br>Time: 9:00 a.m.<br><br>**GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT MORENO'S *IN LIMINE* MOTIONS TO:**<br><br>**1) EXCLUDE HEARSAY STATEMENTS ABOUT SUPPOSED FINANCIAL ARRANGEMENTS;**<br>**2) EXCLUDE 404(B) AND 609 EVIDENCE;**<br>**3) EXCLUDE EXPERT TESTIMONY;**<br>**4) PREVENT A COPY OF THE INDICTMENT FROM BEING SUBMITTED DURING DELIBERATIONS;**<br>**5) ALLOW ATTORNEY-CONDUCTED VOIR DIRE;**<br>**6) DISCLOSE GRAND JURY TRANSCRIPTS;**<br>**7) PROVIDE A SEPARATE COPY OF THE JURY INSTRUCTIONS FOR EACH JUROR DURING DELIBERATIONS;**<br>**8) PROHIBIT VOUCHING;**<br>**9) PRECLUDE EVIDENCE OF POST-ARREST SILENCE;**<br>**10) SEVER DEFENDANTS;**<br>**11) GRANT LEAVE TO FILE FURTHER MOTIONS** |

08CR0546-BEN

|   |                                                                                                          |
|---|----------------------------------------------------------------------------------------------------------|
| 1 | ) **TOGETHER WITH THE UNITED STATES' MOTIONS IN LIMINE TO:** |
| 2 | ) |
| 3 | ) **A) PRECLUDE DEFENDANT FROM MAKING REFERENCE TO FAMILY, HEALTH, AGE, FINANCES, EDUCATION OR POTENTIAL PUNISHMENT** |

COMES NOW the Plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Randy K. Jones, Assistant United States Attorney, and hereby files its response and opposition to defendants' above-referenced motions in limine.

**I.**

**STATEMENT OF THE CASE**

On February 27, 2008, a federal grand jury returned a four-count Indictment charging Defendants Jesus Ortiz ("Ortiz") and Arturo Moreno ("Moreno"), with bringing in illegal aliens for financial gain and aiding and abetting, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 (Counts One and Three); and bringing in illegal aliens without presentation and aiding and abetting, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii) (Counts Two and Four).

On February 28, 2008, the defendants were arraigned on the Indictment and entered pleas of not guilty.

On April 21, 2008, Ortiz filed his pre-trial motions for discovery and to for leave to file further motions. On May 22, 2008, Moreno filed his pre-trial motions for discovery; to suppress impermissibly suggestive identification; to dismiss the indictment due to misinstruction of the grand jury; to suppress evidence under the Fourth Amendment; and for leave to file further motions.

On June 30, 2008, the Government filed its response and opposition to defendants' motions, along with its motion for reciprocal discovery.

On August 18, 2008, the Court denied the defendants' motions and granted the Government's motion for reciprocal discovery.

On September 8, 2008, Moreno filed his motions in limine.

//

//

## II.

## **STATEMENT OF FACTS**

**A.    The Crime**

On Wednesday, February 13, 2008, at approximately 9:00 p.m., Ortiz entered the United States at the Calexico, California East Port of Entry as the driver, sole occupant, and registered owner of a red 1999 Chrysler Sebring convertible. During primary inspection, Ortiz stated he was a United States citizen and presented a California driver's license as identification. Ortiz told United States Customs and Border Protection Service Officer (CBPO) Maria Salazar that he was not bringing anything into the United States. Ortiz' name was queried in the TECS record system and came back negative. Ortiz told Officer Salazar that he had been in Mexico visiting his grandmother. Officer Salazar noticed the car had only crossed one time before. Ortiz stated that he had owned the car for five years. Officer Salazar asked Ortiz if he crossed the border in the car frequently, and Ortiz said that he did. Based on this information, Officer Salazar referred Ortiz and the car to secondary inspection.

After Officer Salazar placed the referral slip on the windshield of the car, she told Ortiz to drive to the secondary lot. Officer Salazar asked Ortiz if he knew where the lot was. Ortiz said, "yes, straight ahead." Officer Salazar watched as Ortiz drove toward the secondary lot. As Ortiz got closer to the entrance of the secondary lot, he quickly veered the car northbound and "ran the port." Officer Salazar tried to contact someone in the secondary lot to stop the car but was unable to reach anyone in time.

The Calexico Police Department was called to assist in locating the car. A description of the Ortiz' car was transmitted over police radio. About 15 minutes later, Calexico Police Officer Mario Alcazar saw the car near Ortiz' residence. Ortiz was the driver and Moreno was the passenger. There were two other passengers riding in the back seat of the car. Ortiz parked the car in his driveway. All four occupants were removed from the car and taken back to the port of entry. Further investigation revealed that the two passengers were undocumented aliens from Mexico who had been smuggled into the United States in the vehicle.

Ortiz was later identified by Officer Salazar as the driver of the car that fled the port of entry.

//

//

### B. Criminal and Immigration History

A subsequent records check revealed that Ortiz did not have a prior criminal or immigration record. The records check revealed that Moreno has a prior 2003 arrest for alien smuggling at the Calexico, California Port of Entry, but prosecution was denied. Moreno also has several DUI convictions.

### C. Post Miranda Statements

On February 14, 2008, at approximately 4:14 a.m., Ortiz was placed under arrest and advised of his Miranda rights by CBPO Leticia Casillas. Ortiz stated he understood his rights and agreed to answer questions without an attorney being present. Ortiz gave the following statement:

> He went to Mexicali, Mexico, to a restaurant, to make a reservation and claimed he was traveling alone. When he arrived at the port of entry, the primary officer questioned him and referred him to secondary. On his way to secondary, he decided to bypass secondary. Since no one told him to stop and he figured that if the officers really wanted him to go to secondary they would have stopped him or called him back. He drove to Moreno's home in Calexico and called Moreno on the phone to come outside. They drove to a McDonald's restaurant in Calexico. Upon arrival the restaurant, they were approached by two individuals who asked for a ride to Heber, California. He and Moreno agreed to give them a ride. Instead of going into the restaurant, they drove the individuals to Ortiz' home to pick up his car and drop off his sister's car. Upon arrival at his home, they were arrested by the Calexico Police at gunpoint.

At approximately 5:45 a.m., Officer Casillas placed Moreno under arrest and advised him of his Miranda rights. Moreno stated he understood his rights and invoked.

### D. Material Witnesses' Statements

Material Witness Erik Esquivel-Prado ("Esquivel"), in a videotaped interview, stated among other things that:

> He was a citizen and native of Mexico with no legal entry documents to enter, reside or pass thru the United States. He arrived in Mexicali on February 12, 2008, at the Mexicali airport with two other friends, a female named, Veronica and his brother in law. Upon arriving to Mexicali, they took a cab to a shopping enter somewhere in Mexicali to a store named "Ley" to wait for a person whom his brother in law had arranged to help them gain entry into the U.S. A green four door vehicle showed up with two females. He and his two companions got in the vehicle with the two females, and they drove to an unknown street where the car pulled over and everyone exited the car except for the female driver. From there they traveled by bus to a Wal-Mart then to downtown Mexicali. A female named Bertha then took them to her house where she put out a mattress for them to sleep on. The next day, they woke up, had breakfast and in the afternoon Bertha took them back down town til about 9:00 pm, when another car showed up with a male driver. They were then told to go with the male driver who drove them to a liquor store. The male then exited the vehicle and went to talk to another male who was in a red convertible. When the man came back to the car, he told him that they were

going to get in another vehicle. They left that location, traveled though various streets and came to a street that was not very well lit. They were instructed to get out of the car and the driver of the red convertible opened the trunk and the driver of the other car told him and the female to get in the trunk. His brother in law stayed behind. He was told by the males to stay quiet. The car then began to move and all he could hear was the radio playing. The radio was then lowered and he heard a voice asking questions which appeared to be in the English language. The car began to move again but this time the car went fast. It felt like the car went out of control. He was scared and his legs began to feel numb and he started to bang on the trunk and yelled "get us out" and the car would go fast, then stop, then drive fast again. The car stopped and it sounded like someone either got in or out of the car. He yelled again and he heard two voices say "calm down we are going to get you out". The car then stopped in what appeared to be a cul-de-sac and they were let out of the trunk. There was now another male who he had not seen when he first got in trunk. They were put in the back seat of the vehicle. It was about fifteen minutes from the time he started to bang on the trunk to the time he was let out of the trunk. Once in the back seat of the vehicle, the two males offered them water. He asked if they were already in the U.S. and both males answered "yes", then a police car drove by and the passenger told the driver to keep driving. The police car turned around and pulled up behind them and shined the lights on the car. He was told by the driver and passenger to say that they picked them up at McDonald's and asked them for a ride. The police instructed all of them in the car to get out one by one and then the Border Patrol came and brought them to the port. He was going to pay between $3000 and $4000 to be smuggled into the U.S. and that once in Calexico, he was going to be turned over to another female and then taken to Los Angeles, California and then to Sacramento, California, where he was to live with friends.

Esquivel was presented with two photo line-ups, #1 and #2. On photo line-up #1, Esquivel corrected identified photo #1, defendant Moreno as the passenger. On photo line-up #2, Esquivel correctly identified photo #4, defendant Ortiz as the driver and the person who placed him in the trunk of the car in Mexico prior to their arrival at the port of entry. Esquivel identified Moreno as being present when he was removed from the trunk of the car. Esquivel stated that both Ortiz and Moreno instructed he and the other material witness to tell the officers that they were picked up at the McDonald's restaurant and that they had asked for a ride to Heber, California.

Material Witness Veronica Perez-Castilleja ("Perez"), in a videotaped interview, stated among other things that:

She was a citizen and native of Mexico with no legal entry documents to enter, reside or pass thru the United States. She arrived to Mexicali by plane from Mexico with two friends, Erik and Edgar, her boyfriend. From the airport she took a cab to a shopping center to wait for a female who was going to help them gain entry into the U.S.. Edgar made the arrangements with the female and later two females showed up and took them downtown with one of the females, named Bertha. Later that night they went to Bertha's house to sleep. The next day they went back to the shopping center and Bertha made calls and a male arrived. They went in his car, Edgar stayed behind. They left Bertha and went with the male who then took them to a liquor store. The male got out of the car and went to talk to a guy in a red convertible. They left there and went to another street and parked. The male told her to get out of the car and go to the car with the guy in the

red convertible. The guy said "Hi" and he opened the trunk. She got in and then she got out so that her friend Erik could get in and then she went back in the trunk. Both males were there when they were placed in the trunk. Both men closed the trunk. The first male said don't move or make any noise. The car began to move and all she could hear was the radio and then she heard a women's voice and stated that she figured they were at the port of entry to the U.S. The car advanced fast and she felt a hard hit like a speed bump. She said her legs felt numb. Erik hit the trunk and said "open it". Later the car stopped. The car door closed again the began to move. A while later, the car stopped again and they opened the trunk and now there were two guys. The driver, the one she saw in Mexicali, told her to get out and asked if they were okay. The passenger told them that they were already in the U.S. They asked them if they wanted water. They got in the back seat of the car and the car started moving. Later they saw a police car coming towards them and pass them. The guy pulled into a house and said the police are coming back. He told them to say that they picked us up at Mc Donald's and that we don't know them. She asked them what she should say if the police asked where they were going. The driver said to tell them they were going to Heber. The police stopped them and told them to get out first. She asked the passenger where do I say she was going again, and he said Heber. They were all instructed to get out of the car one by one. The officers dressed in green brought them to the port. She said they were going to pay between $3000 and $4000 USD to be smuggled into the U.S.

Perez was presented with two photo line-ups, #1 and #2. On photo line-up #1, Perez correctly identified photo #5, defendant Ortiz, as the driver, and on photo line-up #2, Perez correctly identified photo #3, defendant Moreno, as the passenger. Perez identified Ortiz as the person who placed him in the trunk of the car in Mexico prior to their arrival at the port of entry. Perez identified Moreno as being present when she was removed from the trunk of the car. Perez stated that Ortiz and Moreno told her and Esquivel that the police were coming and instructed them to tell the officers that they were picked up at the McDonald's restaurant and that they had asked for a ride to Heber, California.

### III.

### THE UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE

**A.    Exclude Hearsay Statements about Supposed Financial Arrangements**

The United States submits that the two material witnesses should be permitted to testify regarding their respective arrangements to be smuggled into the United States and then transported to their ultimate destination. Mr. Esquivel stated that he was going to pay between $3000 and $4000 to be smuggled into the United States and that once in Calexico, California, he was going to be turned over to another female and then taken to Los Angeles, California and ultimately to Sacramento, California, where he was to live with some friends. He stated that his brother in law had made the smuggling

arrangements. Ms. Perez stated that she too was going to pay between $3000 and $4000 to be smuggled into the United States. She also stated that her boyfriend had made the smuggling arrangements for her.

An out of court statement offered for the truth of the matter asserted is normally considered hearsay under Rule 801(c). However, under Rule 801(d)(2)(E), statements made by a coconspirator of a party during the course and in furtherance of a conspiracy are non-hearsay. Such statements are not hearsay and were deemed non-testimonial by the Supreme Court in Crawford v. Washington, 541 U.S. 36, 55 (2004). The Crawford decision specifically identifies co-conspirator statements as non-testimonial, citing its prior decision in United States v. Bourjaily, 483 U.S. 171 (1987), in which the Supreme Court held that even though the defendant had no opportunity to cross examine the declarant at the time that he made the statements and the declarant was unavailable to testify at trial, the admission of the declarant's statements against the defendant did not violate the Confrontation Clause. Crawford, 541 U.S. at 56. The Supreme Court approved its prior holding regarding co-conspirator statements, citing Bourjaily as an example of an earlier case that was consistent with the principal that the Confrontation Clause permits the admission of non-testimonial statements in the absence of a prior opportunity for cross examination. Crawford, 541 U.S. at 57. Several Circuits have allowed such co-conspirator statements post-Crawford. See United States v. Cianci, 378 F.3d 71, 101-2 (1st Cir. 2004); United States v. Sagat, 377 F.3d 223, 229 (2nd Cir. 2004); United States v. Mickelson, 378 F.3d 810, 819-20 (8th Cir. 2004).

Co-conspirator statements are admissible under Rule 801(d)(2)(E) if the United States demonstrates that (1) a conspiracy existed, (2) the defendant and the declarant were members of the conspiracy, and (3) the statement was made during the course of and in furtherance of the conspiracy. United States v. Bourjaily, 483 U.S. 171 (1987); United States v. Peralta, 941 F.2d 1003, 1007 (9 th Cir. 1991), cert. denied, 503 U.S. 940 (1992). The existence of a conspiracy and defendant's involvement in the conspiracy are questions of fact that must be resolved by the Court by a preponderance of the evidence. Fed. R. Evid. 104; Bourjaily, supra, at 175. "Furtherance of a conspiracy" is to be interpreted broadly. United States v. Manfre, 368 F.3d 832, 838 (8th Cir. 2004).

The United States is not required to charge the defendant with conspiracy, United States v. Layton, 855 F.2d 1388 (1988), or charge the declarant as a co-defendant in any conspiracy in order to

admit co-conspirator statements. <u>United States v. Jones</u>, 542 F.2d 186 (4th Cir. 1976). Further, upon joining the conspiracy, earlier statements made by co-conspirators after inception of the conspiracy become admissible against the defendant. <u>United States v LeRoux</u>, 738 F.2d 943, 949-950 (8th Cir. 1984). In <u>United States v. United States Gypsum Co.</u>, 333 U.S. 364, 393 (1948), the Supreme Court held that "the declarations and acts of various members, even though made prior to the adherence of some to the conspiracy become admissible against all as declarations or acts of coconspirators in aid of the conspiracy." In other words, a defendant who joined the conspiracy at a later date, took the conspiracy as he found it. <u>United States v. Hickey</u>, 360 F.2d 127, 140 (7th Cir. 1966).

The Court may consider the content of the statements in determining whether the co-conspirator statement is admissible. <u>Bourjaily</u>, 483 U.S. at 180. Further, once the Court has ruled that the statement meets the evidentiary requirements for admission under the 801(d)(2)(E), the Court need not make an additional inquiry as to whether the declarant is unavailable or whether there is any independent indicia of reliability. <u>Id.</u> at 182-184.

**1)  Conspiracies Existed**

In this case, the conspiracies consist of the efforts made by known and unknown persons, including both Defendants, the material witnesses, and the paying friends, to smuggle into the United States and transport the material witnesses to their destination within the United States.

**2)  Defendants and the Declarants Were Members of the Conspiracy**

The United States anticipates that the testimony of the material witnesses at trial will demonstrate that one or more of their family members or persons known or unknown were part of the conspiracy. Specifically, the United States anticipates that the material witnesses will explain that family made the arrangements to have them smuggled into the United States. The United States contends that the defendants were also a member of the conspiracy to smuggle the material witnesses to their destination within the United States.

**3)  Co-Conspirator Statements Were Made During the Course of, and in Furtherance of the Conspiracy**

The co-conspirator statements that the United States contends are non-hearsay involve the smuggling arrangements made on behalf of the material witnesses. The United States anticipates that

1  the material witnesses will testify regarding the financial arrangements that were made on their behalf
2  by family members or other persons. If not for the payments, logically, the smugglers would not
3  provide transportation or make the necessary arrangements to smuggle the material witnesses into the
4  United States. Thus, the financial arrangements were an integral component of the smuggling
5  conspiracy and such statements were made in furtherance of the smuggling venture.

6  Although the defendants may have joined the conspiracy after the material witnesses' friends
7  or others made the arrangements for the alien smuggling and transportation, the statements are still
8  admissible against the defendants because the conspiracy already existed when the statements were
9  made. See United States v. United States Gypsum Co., 333 U.S. at 393; United States v LeRoux, 738
10  F.2d at 949-950; United States v. Hickey, 360 F.2d at 140.

11  As such, all statements regarding the financial arrangements made on behalf of the material
12  witnesses should be admissible against the defendants.

13  **B.    Exclude 404(B) and/or 609 Evidence**

14  In a letter that was faxed to Moreno's defense counsel on September 11, 2008, the Government
15  will provide notice to Moreno that the Government intends to introduce evidence of Moreno's
16  November 28, 2003 arrest for alien smuggling under Rule 404(b). The United States will identify the
17  previously provided discovery applicable to Morneo's arrest. The notice will be sufficient to alert
18  defense counsel to the general nature of the additional testimony and thereby avoid surprise. The United
19  States will provide defense counsel with the names of the proposed witnesses and any additional
20  evidence that will be used to substantiate the evidentiary basis for the other acts as soon as possible.

21  Evidence of other crimes, wrongs, or acts is not admissible under Rule 404(b) to prove the
22  character of the defendant in order to show action in conformity therewith. However, evidence of other
23  crimes, wrongs, or acts is admissible under Rule 404(b) so long as its introduction is for other purposes
24  such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of
25  mistake or accident. Rule 404(b) is "an inclusionary rule" under which evidence is inadmissable "only
26  when it proves nothing but the defendant's criminal propensities." United States v. Diggs, 649 F.2d 731,
27  737 (9th Cir.), cert denied, 454 U.S. 970 (1981), overruled on other grounds, United States v.
28

1  McConney, 728 F.2d 1195 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984). Evidence of other
2  acts is admissible under Rule 404(b) if:
3      (1)    the evidence tends to prove a material element of the offense charged:
4      (2)    the prior act is not too remote in time;
5      (3)    the evidence is sufficient to support a finding that the defendant committed
6             the other act; and
7      (4)    (where knowledge and intent are at issue) the act is similar to the offense charged.
8  United States v. Plancarte-Alvarez, 366 F.3d 1058, 1062 (9th Cir. 2004) (citing United States v. Mayans,
9  17 F.3d 1174, 1181 (9th Cir. 1994)); United States v. Arambula-Ruiz, 987 F.2d 599, 602 (9th Cir. 1993)
10 (evaluating admissibility under Rule 404(b) for materiality, similarity, sufficiency, and temporal
11 proximity).

### 1.    Prior Arrest Is Material To The Elements Of The Offense

13 Here, Moreno's 2003 arrest for alien smuggling satisfies these four requirements. First,
14 Moreno's prior involvement in alien smuggling is material to the issues of Moreno's knowledge of the
15 illegal aliens riding in the passenger compartment of the car in this case and his intent to violate the
16 immigration laws. See United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir. 1985) (other act evidence
17 may be introduced if the Government establishes its relevance to an actual issue in the case). Evidence
18 of prior arrests and prior convictions for transporting illegal aliens has been upheld as admissible to
19 prove a defendant's knowledge and intent. See United States v. Winn, 767 F.2d 527, 530 (9th Cir. 1985)
20 (per curiam) (defendant's prior conviction for transportation of illegal aliens was properly admitted
21 "because it shows that appellant had knowledge of the smuggling operation in which he was involved.");
22 United States v. Longoria, 624 F.2d 66, 69 (9th Cir. 1980) (Court did not err in admitting into evidence
23 defendant's conviction for transporting illegal aliens two years prior because it was "highly relevant and
24 admissible to show the requisite knowledge, criminal intent, and lack of innocent purpose"); United
25 States v. Holley, 493 F.2d 581, 584 (9th Cir. 1974) (defendant's prior apprehension for transporting
26 illegal aliens was properly admitted to show knowledge, even though the apprehension did not result
27 in a prosecution).
28

The Ninth Circuit has also upheld the admission of other act evidence to prove absence or mistake or refute an "innocent dupe" defense. See United States v. Ramirez-Jiminez, 967 F.2d 1321, 1325-26 (9th Cir. 1992) (evidence that defendant had been previously observed at a residence used for harboring illegal aliens admissible to show knowledge or reckless disregard in trial for transporting illegal aliens); Winn, 767 F.2d at 530; United States v. Bibo-Rodriguez, 922 F.2d 1398, 1400 (9th Cir. 1991).

### 2. Prior Arrest Is Not Too Remote In Time

Second, the "other act" evidence is not too remote in time. There is no bright-line rule requiring the Court to exclude other act evidence after a certain period of time has elapsed. See United States v. Brown, 880 F.2d 1012, 1015 n. 3 (9th Cir. 1989). Moreno's arrest for alien smuggling on November 28, 2003 is sufficiently recent for the purposes of Rule 404(b). United States v. Johnson, 132 F.3d 1279, 1283 (9th Cir. 1997) (upholding admission of other act that occurred 13 years before charged crime); United States v. Ross, 886 F.2d 264, 267 (9th Cir. 1989) (same).

### 3. There Is Sufficient Evidence Of Prior Arrest

Third, the United States will present sufficient evidence of Moreno's recent arrest for alien smuggling. Other act evidence under Rule 404(b) should be admitted if "there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." Huddleston v. United States, 485 U.S. 681, 685 (1988). The testimony of a single witness satisfies the low-threshold test of sufficient evidence for purposes of Rule 404(b). See United States v. Dhingra, 371 F.3d 557, 566-57 (9th Cir. 2004) (citing United States v. Hinton, 31 F.3d 817, 823 (9th Cir. 1994)). Here, the United States will satisfy this low-threshold test of sufficient evidence through the testimony of a Border Patrol Agent involved in Moreno's prior arrest.

### 4. Prior Arrest Is Similar To Charged Offense

Fourth, Defendant's recent arrest for alien smuggling is almost identical to the crimes charged in this case. The arrest occurred within miles of the area where Defendant was arrested in this case.

### 5. Prior Arrest Is Not Unfairly Prejudicial

Finally, Moreno's prior arrest for alien smuggling is "not the sort of conduct which would provoke a strong and unfairly prejudicial emotional response from the jury." Ramirez-Jiminez, 967 F.2d

1  at 1327. Any prejudice could be minimized by a limiting instruction to the jury instructing them to
2  consider the other acts as it relates to Moreno's knowledge, intent, absence of mistake, and for no other
3  purpose. See United States v. Montgomery, 150 F.3d 983, 1001 (9th Cir. 1998) (an appropriate limiting
4  instruction is a factor weighing in favor of admission of Rule 404(b) evidence).

5    **C.    The Court Should Allow The United States To Impeach Moreno With His Felony Arrest Conviction Under Rule 608**
6

7  If Moreno testifies, the Government intends to impeach him with his 2003 arrest for alien
8  smuggling and the fact that he is currently on probation for his DUI offense.

9  Rule 608(b) provides: "Specific instances of conduct by a witness, for the purpose of attacking
10 or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not
11 be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of
12 truthfulness or untruthfulness, inquired into on cross-examination of the witness (1) concerning the
13 witness' character for truthfulness or untruthfulness. . . ." Fed. R. Evid. 608(b).

14 Clearly, Moreno's alien smuggling arrest and his probation status goes toward his character for
15 untruthfulness.

16    **C.    Exclude Expert Testimony**
17 The United States does not intend to call any expert witnesses in its case-in-chief.

18    **D.    Prevent a Copy of the Indictment from Being Submitted During Deliberations**
19 The Government submits to the Court's general practice as to this request.

20    **E.    Allow Attorney-Conducted Voir Dire**
21 The Government has no objection to attorney-conducted voir-dire, provided the United States
22 is provided with the same amount of time provided to Defendant.

23    **F.    Disclose Grand Jury Transcripts**
24 The Government does not intend to call anyone to testify at trial who testified before the Grand
25 Jury in this case. If the Government does decide to call a witness who testified before the Grand Jury,
26 it will produce any transcripts.

27
28

**G. Provide a Separate Copy of the Jury Instructions for Each Juror During Deliberations**

The Government does not believe it is necessary to provide a copy of the jury instructions to each juror, but submits to the Court's general practice as to this request.

**H. Preclude Vouching**

The Government will not vouch for any witnesses.

**I. Preclude Evidence of Any Post-Arrest Silence**

The United States does not intend to comment upon Moreno's post-Miranda silence. However, Moreno's post-arrest demeanor (lack of physical or emotional response), when confronted with the fact that 2 illegal aliens were found in the vehicle he was a passenger in should be admitted.

In United States v. Velarde-Gomez, 269 F.3d 1023 (9th Cir. 2001) (en banc), the Ninth Circuit disallowed evidence of a suspect's lack of reaction to being accused of smuggling drugs, post-arrest, on the basis that the evidence violated his right to remain silent. Id. at 1031. The holding was grounded in the fact that, in discussing the defendant's reaction, the prosecutor twice asked a Customs agent if the defendant said anything; did not narrow his queries to ask only about physical reaction, but inquired broadly as to any "response;" never used the word "physical;" and elicited testimony that defendant "just sat there," which could have meant he said nothing. Id. at 1031. Notwithstanding this result, Velarde-Gomez did not announce a per se bar of demeanor evidence. Instead, the Ninth Circuit expressly "agree[d] that the government may offer evidence of demeanor," id. at 1030, and said it did "not quarrel with the notion that the prosecutor could have asked about Velarde's non-testimonial physical response." Id. at 1031 (emphasis added).

This deliberate effort by Velarde-Gomez to keep the door open to demeanor evidence in the right circumstances is very important as it is consistent with well-settled principles distinguishing testimonial from physical evidence. The privilege against self-incrimination "protects an accused only from being compelled to testify against himself, or otherwise provide . . . evidence of a testimonial or communicative nature." Schmerber v. California, 384 U.S. 757, 761 (1966). It "does not protect a suspect from being compelled . . . to produce 'real or physical evidence.'" Pennsylvania v. Muniz, 496 U.S. 582, 589 (1990) (citation omitted). Thus, evidence of fingerprints, handwriting, vocal

1 characteristics, stride, gestures, or blood characteristics have been found not to violate the Fifth
2 Amendment. Schmerber, 384 U.S. at 764. Physical demeanor should be no different, especially where
3 evidence relates to reflexive facial movements.

4 Accordingly, testimony about Moreno's nervousness, body language or silence "in the face of
5 questions or comments" should be allowed.

**J.     Sever Defendants**

7 Moreno asks this Court to sever the defendants' trial to protect his constitutional rights. His
8 motion should be denied.

9 Inculpatory hearsay statements of a codefendant are still governed by the oft- invoked rule of
10 Bruton v. United States, 391 U.S. 123 (1968) and its progeny. "Under Bruton and its progeny, the
11 admission of a statement made by a nontestifying codefendant violates the Confrontation Clause when
12 that statement facially, expressly, clearly, or powerfully implicates the defendant." United States v.
13 Angwin, 271 F.3d 786, 796 (9th Cir. 2001).

14 Moereno invokes the rule of Crawford v. Washington, 541 U.S. 36, 68-69 (2004) that admission
15 of testimonial hearsay against the accused violates the Confrontation Clause where the accused has no
16 opportunity to cross-examine the declarant. There is no separate Crawford problem, however. United
17 States v. Lung Fong Chen, 393 F.3d 139, 150 (2d Cir. 2004). Bruton and its progeny and Crawford all
18 require the same things: The jury must be instructed that a nontestifying codefendant's statements may
19 only be used against the codefendant and the statements cannot be so powerfully inculpating that there
20 is substantial risk the jury would ignore the instruction. United States v. Vega-Molina, 407 F.3d 511,
21 519 (1st Cir. 2005); see also Richardson v. Marsh, 481 U.S.200, 211 (1987) (holding that "[t]he
22 Confrontation Clause is not violated by a nontestifying codefendant's confession with a proper limiting
23 instruction" when the confession is redacted to eliminate any reference to the defendant's name or
24 existence); Lung Fong Chen, 393 F.3d at 150 (the same attenuation of the codefendant's statements from
25 the defendant's guilt that prevents Bruton error also prevents Crawford error).

26 A statement is not facially inculpatory just because it identifies the defendant. Id. To be
27 incriminatory on its face, the statement must have a sufficiently "devastating" or "powerful" inculpatory
28

1  impact. Id. (internal quotation marks omitted). "[M]ildly incriminating" statements do not run afoul
2  of the Sixth Amendment rule. Id.

3      The Ninth Circuit's decision in Angwin is illustrative. The defendant, Angwin, was caught
4  transporting illegal aliens and claimed at trial that two men at the roadside had approached him while
5  he was walking his dog and then yelled for fourteen aliens to jump into his motorhome. Id. at 793. This
6  Court held that admission of a codefendant's hearsay testimony that Angwin had talked at the roadside
7  with one man, then ordered her to sit in the passenger seat and not say anything did not affront the Sixth
8  Amendment - even where the codefendant's attorney relied on the statement to argue that Angwin had
9  duped the codefendant into the crime. Id. at 793-94, 796-97. The Ninth Circuit reasoned that the
10 evidence was susceptible to varying interpretations and was not facially or powerfully incriminating.
11 Id. at 796-98.

12     Here, Ortiz' statements about what happened on the date in question are clearly not facially or
13 powerfully incriminating.

14     **K.**    **Grant Leave to File Further Motions**

15     The Government leaves this request to the Court's discretion.

16     **IV**

17     **THE UNITED STATES' MOTIONS IN LIMINE**

18
19     **A.**    **The Court Should Prohibit Defendant from Making Reference to Defendant's Family, Health, Age, Finances, Education and Potential Punishment**

20     Evidence of, and thus argument referring to, Defendant's family, health, age, finances, education
21 and potential punishment is inadmissible and improper.

22     Fed. R. of Evid. 402 provides that evidence "which is not relevant is not admissible." Fed. R.
23 Evid. 403 provides further that even relevant evidence may be inadmissible "if its probative value is
24 substantially outweighed by the danger of unfair prejudice." The Ninth Circuit Model Jury Instructions
25 explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices,
26 or sympathy." § 3.1 (2000 Edition). Additionally, it is inappropriate for a jury to be informed of the
27 consequences of their verdict. United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991).

28

1  Reference to Defendant's family, health, age, finances, education and potential punishment may
2  be relevant at sentencing. However, in an alien smuggling trial, such reference is not only irrelevant and
3  unfairly prejudicial but a blatant play for sympathy and jury nullification as well

**V**

**CONCLUSION**

Based on the foregoing, defendant Moreno's motions should be denied.

DATED: September 11, 2008

                                        Respectfully Submitted,

                                        KAREN P. HEWITT
                                        United States Attorney

                                        *s/ Randy K. Jones*
                                        RANDY K. JONES
                                        Assistant United States Attorney
                                        Attorneys for Plaintiff
                                        United States of America
                                        Email: randy.jones2@usdoj.gov

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 08cr0546-BEN |
| Plaintiff, | |
| v. | **CERTIFICATE OF SERVICE** |
| ARTURO MORENO, JR. (2), | |
| Defendant. | |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IT IS HEREBY CERTIFIED THAT:

I, RANDY K. JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT ARTURO MORENO'S MOTIONS IN LIMINE** on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Stephen D. Demik     stephen_demik@fd.org
2. Knut Johnson         knut@knutjohnson.com

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 11, 2008

*s/ Randy K. Jones*
RANDY K. JONES

08CR0546-BEN